OF THE

# COURT OF APPEALS OF KENTUCKY.

## WINTER TERM, 1874.

CASE 1—PETITION EQUITY—MARCH 4, 1875.

11bu    1
e112  299
     112  300₁

## Kuevan, &c. v. Specker, &c.

APPEAL FROM CAMPBELL CIRCUIT COURT.

1. A HOMESTEAD EXEMPTION IS NOT LOST BY A FRAUDULENT CONVEY-
ANCE BY HUSBAND AND WIFE TO A THIRD PARTY who re-conveyed
to the wife of the fraudulent grantor.
   A fraudulent conveyance does not enlarge the rights of cred-
itors, but merely leaves them to enforce their rights as if no convey-
ance had been made.
2. A FRAUDULENT VENDEE WILL NOT BE FAVORED IN A COURT OF
EQUITY where there is a doubt as to whether he paid any considera-
tion for the conveyance of the land to him.

SAMUEL GEISLER,  }
ORRIN B. HALLAM, }  . . . . . . . .  For Appellants,

CITED

    Revised Statutes, chap. 40, sec. 2.
    Civil Code, secs. 253, 440, 474, 475, 476, 477.
    MS. Opinion, June, 1856, Hardin v. Halsell.
    .Scribner on Dower, 610.
    Washburn on Real Property, 213. . .
    MS. Opinion, October, 1874, Randall v. Randall.
    3 Bush, 414, Whitaker v. Garnett.
    7 Bush, 585, Place v. Rhem, &c.

VOL. XI.—2                                        (1)

6 Bush, 515, Lishy, &c. v. Perry, &c.

8 Bush, 28, Lockett's adm'r v. James, adm'r.

6 Bush, 83, Dugan v. Massey.

2 Bush, 70, Lowry v. Fisher, &c.

6 Paige, 465, Manhattan Co. v. Evertson.

14 Ohio Statutes, 298, Sears v. Hauks, &c.

HAWKINS, . . . . . . . . For Appellees Simon & Co.

PRYOR & CHAMBERS, . . For Appellees Specker & Co.,

CITED

Civil Code, sec. 474.         6 Paige, 465.

Revised Statutes, 1 Stanton, p. 488, sec. 1.

5 Bush, 63, Harris v. Dale.

6 Bush, 86, Allen v. Perry.

1 Met. 397, Short v. Tinsley.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellees Simon & Co. and J. B. Specker & Co. filed their actions in equity in the Campbell Circuit Court against Theodore Kuevan, Margaret Kuevan, and Lewis Kuevan, in which it is alleged that Theodore Kuevan is indebted to them in certain sums of money, for which they had obtained judgments, upon which executions had issued, and were returned by the sheriff, into whose hands they had been placed for collection, "*no property found.*" It is further alleged that the defendant, being the owner of certain lots and parts of lots in the town of Dayton, had conveyed the same, in conjunction with his wife, Margaret Kuevan, to Lewis Kuevan, and that Lewis had then re-conveyed the same lots to Margaret Kuevan, the wife of the defendant Theodore; that both of these conveyances were made after the indebtedness to the plaintiffs had accrued, and for the fraudulent purpose of evading the payment of their debts and to hinder and delay creditors, etc. The actions were consolidated, and upon answers being filed by all the parties defendant the court below adjudged that the conveyances were fraudulent, and directed a sale of the property to satisfy the judgments. After the case had been prepared for

trial Kuevan and wife offered to file an amended answer in the nature of a petition asking that a homestead be reserved to them by the judgment. The court refused to permit this pleading to be filed, of which they both complain, and also insist, as well as Lewis Kuevan, that the court below erred in adjudging the conveyances fraudulent. The court below also determined that as Lewis Kuevan paid some of the purchase-money to Theodore Kuevan, and this money having been applied to the payment of his father's debts, that to this extent he was entitled to a prior lien over the creditors, of which the appellees complain and have prayed a cross-appeal.

It may be inferred from the description given of the property in the deeds made by these parties that the lots were indivisible, or that a homestead could not be assigned the appellants without greatly impairing the value of the property; if so, it was highly proper that Mrs. Kuevan and her husband should ask to have the homestead reserved by the judgment, or the sum of one thousand dollars paid over to them out of the proceeds of the sale. Although Kuevan and his wife had conveyed the property, still there had been a subsequent conveyance of the identical property back to the wife, and as between her and the grantee in the first deed (Lewis Kuevan) she was invested with the legal title.

These appellees are asking now to subject the property to the payment of their debts, upon the ground that the conveyance to the son was fraudulent and void as to creditors, and if made liable by the chancellor it must be for the reason that it is still the property of Theodore Kuevan, the debtor. If his property (himself and wife being still in possession), the creditors will not be allowed to say that we can subject it to satisfy our demands because he is still the owner, and at the same time deny his right to a homestead for the reason that he is not the owner. If the property is made liable for Theodore Kuevan's debts for the reason that the conveyance is fraudulent

and void, it must be sold subject to the exemptions made by law for the benefit of the debtor.

The appellees lose nothing by the recognition of this claim to a homestead. If no conveyance had been made they could only have made the property liable in the same way. A fraudulent conveyance does not enlarge the rights of creditors, but only leaves them to enforce such rights as if no conveyance had been made. This court has decided in various cases where a deed is actually fraudulent and has been declared void in an action upon the part of creditors, that it does not deprive the wife of her right to dower, although she has acknowledged the fraudulent instrument in the manner prescribed by the statute. (Lockett's adm'r v. James, adm'r, 8 Bush; Dugan v. Massey, 6 Bush.)

Upon the question of fraud it appears that Theodore Kuevan and his wife had been engaged in merchandising in Dayton, the business being conducted chiefly by the wife, and the indebtedness to these appellees originating from the purchase of goods made by Mrs. Kuevan to supply that mercantile establishment. After they became involved the testimony conduces to show that they were desirous of avoiding the payment of the claim of Simon & Co., and in order to accomplish this object Mrs. Kuevan made a proposition to J. B. Specker, one of the firm of J. B. Specker & Co., to convey to his firm that property, not only to secure them, but to prevent Simon & Co. from making their debt. This proposition would have been accepted by Specker (at least he seems not to have been indifferent to it), but for the refusal of Mrs. Kuevan to comply with her promise in this regard and the subsequent execution of the conveyance sought to be canceled. Kuevan and his wife then convey to their son Lewis Kuevan all this real estate for the alleged consideration of $2,000 on the 28th of October, 1869, and Lewis Kuevan re-conveys it to his stepmother on the 4th of June, 1870, for the consideration of $3,000. Lewis Kuevan

knew that his father was involved at the time he obtained a conveyance of this property, and the facts indicate clearly that the object in accepting the deed was to enable his father to avoid the payment of his debts. He attempts to create the impression that his purchase was made to enable his father to pay these debts, as he was in no condition to aid him in any other manner, and in less than twelve months after he *sells* and conveys this property back to his stepmother at an advanced price of $3,000, and, what is remarkable in this *bona fide transaction,* the purchase-money or its equivalent has been paid by all the parties and these creditors left with their debts unpaid. The stepmother is in possession of the property under the deed from the *son* Lewis, and the latter has Helman's note for $2,185 executed as a part of the consideration for a part of the property re-conveyed to the mother and sold by her to Helman; and yet they claim that all these transactions were made in good faith, and that these appellees have no right to subject the property or its proceeds. Theodore Kuevan's recollection is so vague and uncertain that he does not recollect whether his son paid him $2,000 or $3,500 for this property, and swears in addition that the son never paid him more than $100 at any one time. The mother swears that Lewis paid $2,000 at the time the deed was made, and Lewis says he paid $950 in greenbacks and bonds amounting to $1,050, and that Specker & Co. obtained one of the bonds. It does appear that the father had deposited a bond for $1,000 with Specker & Co. as collateral security for these debts, but afterward withdrew it, and what disposition was then made of it does not appear.

If the money and bonds said to have been paid by Lewis for the property had been applied to the payment of debts, it could easily have been shown to what debts, or to what purposes this fund had been applied. The fraud is so apparent in this case that it needs only to recite the facts to show the object the parties had in view when executing these deeds. It may be

said that one of the firm of J. B. Specker & Co. was willing to aid the appellants in the effort to defraud Simon & Co.; still he has not done so, and appears in this case as a *bona fide* creditor.

A rehearing having been granted in this case, it left the former opinion open for revision as to all the parties. The appellees may not have regarded their claim as in danger when the right to a homestead had been denied Mrs. Kuevan; and whether so or not, the rehearing applied to the whole case unless there was some limitation placed upon the rights of the parties by the order granting it.

The facts conduce to show that no consideration was ever paid by Lewis Kuevan for this property. At least this question is involved in much doubt; and in such a state of case the fraudulent grantee, who has not only contributed to the fraud, but has been the principal instrument for its accomplishment, can not be favored in a court of equity.

The judgment of the court below is reversed on both the original and cross-appeal, and the cause remanded with directions to set apart a homestead for Mrs. Kuevan if it can be done without greatly impairing the value of the property; if not, the wife is entitled to $1,000 of the proceeds of the sale, the same to be paid to her out of the first payments made on the property. The note of Helman and the real estate or its proceeds when sold will first be applied to the payment of the debts due these appellees. The judgment should be so framed as to describe the property sought to be sold.