Allen vs. Perry.

The circuit court granted the motion, and the defendant appealed from the order granting the same.

For the appellant there was a brief by *John Barker* and *Wm. Brown*, and oral argument by *Mr. Brown*.

For the respondent there was a brief by *R. P. Perry*, attorney, and *A. W. Perry*, of counsel, and oral argument by *J. W. Lusk.*

## ALLEN vs. PERRY.

*November 6 — November 21, 1882.*

INSTRUCTIONS TO JURY: HUSBAND AND WIFE: FRAUD: EVIDENCE: HOMESTEAD. *(1) What charge to jury must cover. (2) Gift or sale of exempt property, when fraudulent. (3) Burden of proof. (4) Proof of title in wife. (5) Release of homestead right of wife as consideration.*

1. Where instructions to the jury, asked by a party, are refused on the ground that they were not presented to the court within the time prescribed by its rules, the charge of the court must submit to the

jury the law applicable to the case, as made by the evidence of such party, upon the points to which attention is called in such instructions.

2. A gift or sale, by a debtor, of property exempt by law from seizure on attachment or execution, either to a stranger or to his wife, cannot be a fraud upon his creditors, unless such gift or sale was made with intent to perpetrate a fraud upon the exemption law; and (per TAYLOR, J.) even in that case such intent would not avoid the gift or sale, unless the debtor had in fact made an attempt to defraud the exemption law by purchasing other property of like kind, which he claimed to hold as exempt, or by abandoning the use of the exempt property sold when such use rendered it exempt.

3. The rule as to the purchase of property by the wife from the husband, that in a contest between her and his creditors the burden of proof is upon her to show that it was in good faith and for a valuable consideration, does not apply to the purchase of exempt property.

4. In an action by a wife against creditors of her husband to recover property seized on an attachment against his goods, which, with the assent of the husband, she claims to be her own, and which, if the husband's, is exempt, there should be no strict rule as to the proof of her title.

5. The release by a wife of her right in an exempt homestead is a good consideration, as against the creditors of her husband, for money paid to her on the sale thereof, and in a contest between her and such creditors it is error to instruct the jury that "the transaction must be bona fide, and that such a transaction must be watched with considerable jealousy on account of the relative situation of the parties."

APPEAL from the Circuit Court for *Sauk* County.

The case is stated in the opinion. There was a verdict and judgment for the defendant, and the plaintiff appealed.

For the appellant there was a brief by *John Barker* and *William Brown*, and oral argument by *Mr. Brown*. To the point that the special instructions requested on behalf of the plaintiff were correct and should have been given, they cited: *Carhart v. Harshaw*, 45 Wis., 340–349; *Bond v. Seymor*, 2 Pin., 105; *Dreutzer v. Bell*, 11 Wis., 114; *Pike v. Miles*, 23 id., 164; *Murphy v. Crouch*, 24 id., 365; *Hibben v. Soyer*, 33 id., 319; *Smith v. Rumsey*, 33 Mich., 183; *Smith*

*v. Allen*, 39 Miss., 469; *Edmonson v. Meacham*, 50 id., 34; *Crummen v. Bennet*, 68 N. C., 494; *Duvall v. Rollins*, 71 id., 218; *Danforth v. Beattie*, 43 Vt., 138; *Lishy v. Perry*, 6 Bush, 515; *Kuevan v. Specker*, 11 id., 1; *Sears v. Hanks*, 14 Ohio St., 298; *Mannan v. Merritt*, 11 Allen, 582; *Cox v. Wilder*, 2 Dill., 45.

The cause was submitted for the respondent on the brief of *R. P. Perry*, as attorney, and *A. W. Perry*, of counsel.

TAYLOR, J. This is an action of replevin to recover the possession of a span of horses, harness, and wagon claimed to be owned by the plaintiff, and which had been taken upon a writ of attachment by the defendant in an action against the plaintiff's husband. The writ of attachment was issued in an action in favor of a creditor of the husband upon a claim which was contracted previous to the time when the plaintiff alleges she obtained the property and money of her husband, with which she claims to have purchased the greater part of the property in question. The evidence tends at least to show that the money which purchased the two horses and the harness came to the plaintiff from her husband, and was a part of the price received for his homestead on a sale thereof made by him; and that the money was given to her, at the time the deed was executed, as a consideration for consenting to such sale of the homestead and signing the conveyance thereof. The wagon was claimed to have been acquired by the wife in exchange for a horse her husband gave to her previous to their marriage. The evidence also shows conclusively that at the time the property was attached by the defendant the plaintiff and her husband were residents of this state; that he was a farmer, and neither he nor the plaintiff had or owned any horses, harness, or wagon other than those seized by the defendant.

The claim of the defendant on the trial was that the property in fact belonged to the plaintiff's husband, and if there

had been any horse given to the plaintiff by her husband before their marriage, or if any of the money received on the sale of the homestead had been received by the wife, either from her husband or from the purchaser of such homestead, that such gift of the horse and the money was fraudulent and void as to the husband's creditors. The evidence showed that the attaching creditor was such creditor at the time of the sale of the homestead, but not at the time of the alleged gift of the horse, which was finally traded for the wagon in question in this action. We deem it unnecessary to give any detailed statement of the evidence given on the trial, as we think the judgment must be reversed, for the reason that the charge of the learned circuit judge did not properly submit the questions raised by the evidence to the jury.

The counsel for the plaintiff requested the judge to give the jury the following instructions: "*First.* This property in this case being exempt, as it appears it was by the testimony in this case, when Charles Allen, the husband of this plaintiff, was the owner, he had the right· to donate the property or sell it to his wife; and, it being exempt, it would not be liable to seizure and sale on execution against Charles Allen, the husband of the plaintiff. *Second.* This property being exempt when the husband of the plaintiff conveyed or gave it to his wife, the plaintiff, it cannot be held fraudulent as to the husband's creditors, for the reason that, being exempt, it was as much beyond their reach before the gift as it was after the gift. *Third.* A husband may, either with or without the intervention of a trustee, enter into a contract with his wife for a valuable consideration, and a settlement made in pursuance of it will be valid against previous as well as subsequent creditors. *Fourth.* The relinquishment of a homestead, or the release of a contingent right of dower, is a valuable consideration for the receiving or paying of money, as was done in this case."

The court refused to give the instructions asked, upon the ground, as is shown by the bill of exceptions, that by a rule of the court the instructions were not requested in time. These instructions asked, although not perhaps presented to the court within the time prescribed by its rules, must necessarily have called the attention of the court to the fact that the plaintiff insisted that the question, whether the property in controversy, if the property of the husband at the time it was attached, was exempt from attachment, and that the homestead, at the time of the sale and when the wife claims to have received a part of the proceeds of such sale as her own property, was also exempt from the claims of her husband's creditors, had an important bearing upon the plaintiff's rights in this action; and the learned circuit judge was therefore bound to submit to the jury in his charge the law applicable to the case as made by the plaintiff in her evidence upon these points. These questions the learned judge in his general charge wholly ignored. The following is the whole of the general charge, except the statement as to what the parties claim, and directions as to the verdict it would be proper for the jury to render in the case:

"*First.* In regard to all the property except the wagon, she claims that sometime before this transaction,— but it is claimed that it was while the debt upon which the attachment was issued existed,— the husband desired to sell the homestead of the parties upon which they resided; that she refused to sign the deed unless he would make over to her one third of the money derived from the sale; that he did so, and that all the property of which I am now speaking, which includes it all except the wagon, was purchased with that money, or that it was obtained by trading or exchanging property for the property in question, which was purchased with that money. Now, it is not very material that you should understand what the rights of a married woman in a homestead are for the purpose of considering

the questions that will be submitted to you, but I will state in a general way what I understand her rights to be in the homestead. The husband cannot sell or dispose of it during the life of both, so long as it remains a homestead, without her signature; in fact, can pass no title whatever. If she survives him, and they have no issue, she inherits the property absolutely; it goes to her and her heirs, as I understand it. If there is issue, she retains the use of it during widowhood; if the widowhood continued, during her life; if not, up to the time that she marries; this being her right in the homestead. She claims that she refused to sign the deed unless her husband would settle upon her one third of the proceeds, and that was a reasonable settlement in view of her rights in the homestead. I charge you, as a matter of law, that a relinquishment in good faith, and as a *bona fide* transaction to secure for herself the money received upon such consideration as a settlement *post-nuptial*, or after the marriage, is a valid consideration, if it is made in good faith and not colorable, for the purpose of keeping the property that may be afterwards obtained with the money from the hands of creditors. This is her claim in regard to the property which I have just been speaking of, and it is a question of fact for you to determine, from all the facts and circumstances proven, whether the claim is well founded, and whether such a transaction occurred, and whether the transaction was *bona fide* and in good faith, and not merely colorable, for the purpose of keeping property afterwards acquired by virtue of the money from creditors. In relation to such settlements I will state further, and I quote from approved authority upon such subjects, (authority which I approve), as follows: ' The question in every case is whether the settlement is a *bona fide* transaction, or whether it is a trick and contrivance participated in by both parties to defraud creditors,' and that is a question, of course, for the jury; and further upon the subject: ' Such settlements are,

however, watched with considerable jealousy on account of the relative situation of the parties and the convenient cover they afford a debtor to protect his property and impose upon his creditors.'

" There might be, gentlemen, and I refer to it here because it is the only way in which it will appear, some further question in relation to the harness in controversy, as it was purchased directly from the husband with money which the plaintiff claims she thus derived; but counsel for defendant makes no claim but that it should be treated like the other property, and not differently, because purchased with money derived from the same source that the other property was purchased with about which I have been speaking. Then we come to the claim in regard to the balance of the property — the wagon. In regard to that it is claimed that prior to marriage the husband gave her a horse; that she traded, I think the claim is, that horse for the wagon in question. Now, gentlemen, in order to constitute a gift there must be a delivery. A gift without delivery is of no validity. And I will further say to you that it is not sufficient to make a valid gift of property that the person giving says to the party claiming the gift, ' I give you this property,' or that the property will be given on the happening of a future event, like marriage, if the person giving still remains in possession of the property, controlling it in the same manner he did before. There must be something more. The party giving must surrender to the other party the possession, if not by manual delivery, by passing over to such party unconditionally all control and dominion over it; and where the property is capable of actual or manual delivery, like a horse, there should be something tangible and perceptible indicating a change of possession or control of the property. This is all I care to say upon this part of the case, and this brings me to other questions."

It will be seen by an examination of these instructions that

the learned judge avoided giving any instruction as to the effect which the fact that the homestead was exempt from the claim of the husband's creditors, and the other fact that the property seized as the property of the husband was also exempt, would or might have upon the rights of the plaintiff. The evidence, we think, shows pretty clearly that since the sale of the homestead of the husband, when the plaintiff claims that she received a part of the price thereof as her separate property, and that the money so received by her was invested in the team and harness which was seized by the defendant, neither she nor her husband have at any time had any team, harness, or wagon which would not be exempt from seizure on attachment if owned by the husband. It is clear, therefore, that under the decisions of this court a sale or transfer of such team, etc., either to a stranger or to his wife, could not be a fraud upon his creditors. They would not be entitled to seize the same if it were owned by the husband, and why a transfer by him to his wife while the same continued to be held and used by them could be a fraud upon his creditors we are unable to see. Very clearly, in the case at bar, if the property had been the property of the husband it would have been exempt from seizure; and so if there had been a sale of the property which was intended to be a fraud upon the husband's creditors, still, if at the time of the seizure of them by the sheriff the husband had no other property of that kind upon which he could claim an exemption, the effect of holding the sale void as to his creditors would only leave the title in the husband, and being still in him, and he having no other property of like kind to which the exemption could attach, it would still remain exempt. This is, we think, the effect of the decisions of this court. *Dreutzer v. Bell*, 11 Wis., 114; *Pike v. Miles*, 23 Wis., 164; *Murphy v. Crouch*, 24 Wis., 365; *Main v. Bell*, 27 Wis., 517; *Hibben v. Soyer*, 33 Wis., 319; *Carhart v. Harshaw*, 45 Wis., 340. The decisions

of this court are sustained by the following cases in other states: *Anthony v. Wade*, 1 Bush, 110; *Kuevan v. Specker*, 11 Bush, 3; *Lishy v. Perry*, 6 Bush, 515; *Smith v. Rumsey*, 33 Mich., 183; *Rayner v. Witcher*, 6 Allen, 294; *Mannan v. Merritt*, 11 Allen, 582; *Woodworth v. Paige*, 5 Ohio St., 70; *Cox v. Shropshire*, 25 Tex., 113.

These cases do not conflict with the doctrine laid down by the late learned chief justice in his dissenting opinion in the case of *Carhart v. Harshaw, supra*. It is possible that a conveyance of a homestead, or of exempt property, may be merely colorable, and not intended to pass any real title to the grantee or vendee, except as a trustee for the grantor. But in that case the grant can only be avoided by the creditors of the grantor or vendor when it is made clear by the subsequent acts of the parties that it would be inequitable to hold the conveyance valid because it would enable the grantor or vendor to claim a double exemption, or an exemption which the law does not secure to him. The instances given by the learned chief justice show clearly the limitation of the rule which will make a conveyance of exempt property void as to creditors. He says: "But when one having exempt chattels abandons, or is about to abandon, the use of them, on which the exemption rests, and, for the purpose of keeping them out of the reach of his creditors, makes a colorable gift or sale of them for his own use, the fraudulent intent will avoid the gift or sale as against creditors. So, too, if the fraud against creditors involve also a fraud upon the exemption law; as where one, having a team exempt by law, makes a colorable gift or sale of it for his own use for the purpose of acquiring another team for his exemption, and of holding both teams for his own use — the one by way of exemption, and the other under the fraudulent gift or sale." So, too, a merely colorable sale of a homestead, for the purpose of enabling the owner to aban-

Allen vs. Perry.

don the same and leave the state, or to acquire another within the state, and hold both in fact for his own benefit, would be fraudulent against creditors. We do not understand that the evidence in this case shows any such intent on the part of the husband of the plaintiff in giving this plaintiff a part of the money realized from the homestead as her own property, nor does the investment of a part of the money so received by her in a team, harness, and wagon indicate any intent on the part of either to commit a fraud upon the exemption law by enabling the wife to hold one team, wagon, and harness exempt, while the husband holds another so exempt. The fact that the property would have been exempt if owned by the husband, places the sale of it by him upon an entirely different footing in the law from that of the sale of property not so exempt. And the rule as to the purchase of property by the wife from the husband in a contest between her and her husband's creditors, which casts the burden of proof upon her to show that it was made in good faith, and for a valuable consideration, does not apply to the purchase of exempt property. The creditors, having no claim to such property in the hands of the husband, cannot complain of his selling it or giving it away to his wife, or any other person, unless it clearly appears that such gift or sale was made with intent to perpetrate a fraud upon the exemption law; and even in that case such intent, in my opinion, would not avoid the gift or sale unless the vendor or donor had in fact made an attempt to defraud the exemption law by purchasing other property of like kind, which he claimed to hold as exempt, or by abandoning the use of the exempt property sold when such use rendered it exempt.

The question in the case at bar, upon the evidence, was not whether there was a *bona fide* purchase of the property claimed by the wife from her husband, but whether there

was such a purchase as was good between them.   If the jury believed that upon the sale of the homestead the husband of the plaintiff had permitted his wife to receive a part of the purchase money as her own, and that she afterwards used that money in the purchase, directly or indirectly, of the team and harness, claiming them as hers, and the husband consented to such claim, then she should have recovered in the action.   Although it may be true that the wife could not recover the property in her own name unless she had a title to it, because it was exempt to the husband, still, as it was very clear that the creditors of the husband would have no right to seize it on attachment against him if he owned it, there ought to be no very strict rule as to the proof of her title when the husband assents to her assertion of title as against his creditors.   See *Leavitt v. Jones*, 26 Alb. Law J., 396.   That the release of the plaintiff's right in the homestead sold was a good consideration as against the creditors of the husband for the money paid to her on the sale thereof, is supported by authority.   See *Holmes v. Winchester*, 14 Reporter, 522; *Bullard v. Briggs*, 7 Pick., 541; *Sykes v. Chadwick*, 18 Wall., 141; *Garlick v. Strong*, 3 Paige, 440. The learned circuit judge so instructed the jury, but qualified it with a statement that " the transaction must be *bona fide*, and that such a transaction must be watched with considerable jealousy on account of the relative situation of the parties," etc.   This language, when used in regard to money received by the wife for the release of her right in the exempt homestead, in a contest between the wife and the creditors of the husband owning the exempt homestead, was clearly improper, and had a tendency to mislead the jury as to the plaintiff's rights.

We think the learned judge should have instructed the jury as to the effect which the exemption laws have upon the question of fraud in the transfer of such property; and,

Allen vs. Perry.

his attention having been called to that feature of the case, his failure to so instruct them was error. For the reasons above stated, the judgment must be reversed.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

LYON, J. In *Carhart v. Harshaw*, 45 Wis., 340, this court held that there is no legal restraint upon the debtor against selling or even giving away his exempt property, and that the motive with which he does so is immaterial, so long as there is no secret trust in his favor. Page 349. I think I am warranted in saying that the judgment on this appeal is ruled by that principle, and that this court adheres to the doctrine of that case, as expressed in the opinion by the present chief justice. If there is anything in the opinion of my brother TAYLOR on this appeal from which an inference may be drawn that the court has adopted the views of the late chief justice contained in his dissenting opinion in that case, it ought to be said that the majority of the members of the court have not assented thereto.

ORTON, J. I fully concur in the decision of this cause, but most respectfully *protest* against that part of the opinion in which it is in effect *assumed* that the circuit court followed and was governed, in its rulings on the law, by a *dissenting* opinion in a former case in this court, and in which it is in effect *insisted* that such dissenting opinion, in respect to the question involved, contains a correct statement of the law as against the opinion of the majority of the court. The circuit courts of this state should not be encouraged, especially by this court, to follow and be governed by the dissenting opinions as against the majority opinions. The majority opinion must be accepted, at least by all the subordinate courts of this state, as containing a correct expression of the law within the case, until it is overruled by this court in a proper manner.