# CASES DETERMINED

# January Term, 1924.

SHARE, Respondent, vs. TRICKLE and another, Garnishees, Appellants.

*January 16—February 12, 1924.*

*Fraudulent conveyances: Knowledge of grantee as to financial condition of grantor: Husband and wife: Rights of wife: Dower: How value is computed: Alienation of dower: Fair consideration for property alleged to have been fraudulently transferred.*

1. In proceedings by a judgment creditor in which the wife of the judgment debtor and her brother were summoned as garnishees, the evidence is *held* to show that the mortgagee (the wife of the judgment debtor) and her brother, to whom she had assigned the mortgage, had knowledge that the husband was indebted to plaintiff at the time that the mortgage was executed to the wife to induce her to sign a deed to land owned by her husband and also at the time that she made the assignment of the mortgage. p. 4.

2. The evidence is also *held* to establish the insolvency of the husband, within the meaning of sec. 2320—4, Stats., at the time that the mortgage for the purchase money was taken in the name of his wife. p. 5.

3. Where the wife of the debtor, at a time prior to the conveyance of their homestead to a third person, agreed to relinquish her dower and homestead rights therein upon the execution to her of a mortgage for the balance due on the purchase price, such agreement constituted a fair consideration to the extent of the value of the dower and homestead rights, in view of sec. 2320—3, Stats., and was valid as against creditors. p. 7.

4. The inchoate right of dower is a valuable right which accrues whenever a husband becomes the owner of land, and will be protected if not released as against the demands of the hus-

band's creditors. The wife may justly bargain for and receive fair consideration for the relinquishment of that right without good ground of complaint being given to creditors of the husband. p. 7.

5. The proper rule for computing the present value of the wife's contingent right of dower, during the life of the husband, is to ascertain the present value of an annuity for her life equal to the interest in the third of the proceeds of the estate to which her contingent right of dower attaches, and then to deduct from the present value of the annuity for her life the value of a similar annuity depending upon the joint lives of herself and her husband; and the difference between those two sums will be the present value of her contingent right of dower. p. 8.

6. An existing indebtedness between husband and wife is properly considered in determining whether the taking of a mortgage in the name of the wife for the purchase price of the husband's land was based on a fair consideration, but her indebtedness to a third person is properly excluded. p. 9.

APPEAL from a judgment of the circuit court for Green county: GEORGE GRIMM, Circuit Judge. *Modified and reversed.*

Plaintiff secured a judgment for $9,000 and interest against defendant Joseph Trickle on a note which he had been forced to pay at maturity. Thereafter defendants *Emma Trickle,* wife of the principal defendant, and *Joseph Elmer,* brother of *Emma Trickle,* were garnished.

Joseph Trickle was the owner of a 230-acre farm in Green county. Upon the security of two mortgages upon this land he borrowed $36,000 and invested it in Texas lands. On March 19, 1920, he borrowed $9,000 on the note above mentioned, payable in one year. Plaintiff signed this note as accommodation maker.

On February 28, 1921, Joseph Trickle sold his farm to one Haldeman, the consideration being $65,000 for the farm and $15,000 for the personal property. Haldeman assumed the mortgages for $36,000, agreed to give a mortgage for $17,000, and paid the balance in cash. It appears that all the cash involved was immediately applied to certain of the debts of Joseph Trickle.

*Emma Trickle* refused to sign the deed to Haldeman unless the mortgage for $17,000 was made payable to her. It was accordingly so made. Thereafter, on March 8th, *Emma Trickle* assigned this mortgage to her brother, *Joseph Elmer*. Joseph Trickle, after the sale of the farm and the payment of the debts above referred to, had no property except the land in Texas, which was of little value.

It appears that several years previous to the making of the mortgage to the wife she had loaned her husband $2,500, which with interest amounted to $3,100, and that none of this amount had been paid to her. It also appears that *Joseph Elmer* had from time to time loaned his sister sums aggregating $2,000, as found by the trial court.

The trial court found that *Emma Trickle* and *Joseph Elmer* had general knowledge of Joseph Trickle's financial affairs, and that at the time of the sale of the farm *Emma Trickle* knew of the $9,000 indebtedness to plaintiff. The court further found that $17,000 was largely in excess of *Emma Trickle's* inchoate dower interest in the lands sold and that the alleged consideration for the execution of the mortgage to her was not a fair consideration in law; and that the transfer of this mortgage to the wife left Joseph Trickle insolvent.

The trial court found as conclusions of law that the transfer of the mortgage to *Emma Trickle,* and the assignment by her to *Joseph Elmer,* were void as to plaintiff; and that plaintiff was entitled to judgment transferring to him an interest in the $17,000 mortgage equal to the amount of his judgment against Joseph Trickle. Judgment was ordered accordingly.

Other facts will be stated in the opinion.

For the appellants there was a brief by *W. H. McGrath* of Monroe and *Jeffris, Mouat, Oestreich, Avery & Wood* of Janesville, and oral argument by *Mr. O. A. Oestreich* and *Mr. McGrath.*

For the respondent there was a brief by *R. J. Grode* of Nekoosa, attorney, and *Rix & Barney* of Milwaukee, of

counsel, and oral argument by *Mr. Grode* and *Mr. Carl B. Rix.*

JONES, J.   Counsel for defendants urge that the court erred in finding that the defendants had general knowledge of Trickle's transactions and of his indebtedness to the plaintiff and others and of his involved financial condition. A special objection is made to the finding that they knew of the note for $9,000 which was to become due soon after the execution of the deed and mortgage on February 28th.

There is undoubtedly some confusion in the testimony on this point.   It is clear that *Mrs. Trickle* had a conference with Mr. Durst, cashier of one of the banks at Monroe, and that at this conference the financial condition of her husband was discussed.   Durst testified that in this conference there was discussion as to the advisability of signing the deed to the farm, but there was considerable uncertainty in his testimony on the question whether this conference was before the $9,000 note became due.

*Mrs. Trickle* testified that she did not know of the $9,000 note until told by Mr. Durst.   There was also considerable confusion and inconsistency in her testimony on this subject.   In addition to the testimony of these two witnesses there were various circumstances attending the transactions of February 28th which might be properly considered as bearing on this subject.

The court saw the witnesses and heard their testimony. We cannot say that the findings on this subject were not sustained by the evidence.   We also consider that the finding on this subject as to the defendant *Elmer* should stand.

The finding that the transfer of the $17,000 mortgage to *Mrs. Trickle* left her husband wholly insolvent is also assigned as error.   It is undisputed that after paying his general debts other than the $9,000 note there was left from the proceeds of the sale only $17,000 for which the note and mortgage here involved were given.   Trickle testified

that after turning over the mortgage he had not a dollar, except the Texas lands.

He owned, it is true, the Texas lands, and at the trial he testified that on the 28th of February he believed them to be of considerable value, but at the time of the trial his information was that they were of no value, "hardly worth bothering with." Evidently the Texas lands were not available for the payment of the $9,000 note soon to become due.

We do not think that the finding of the court on this subject should be disturbed. In this connection the following statute has an important bearing:

"Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration." Sec. 2320—4, Stats.

Counsel for defendants earnestly contend that a fair consideration was paid for the $17,000 mortgage. The following is the statute on this subject under the Uniform Fraudulent Conveyance Act:

"Fair consideration is given for property, or obligation,

"(a) When in exchange for such property, or obligation, as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied, or

"(b) When such property, or obligation is received in good faith to secure a present advance or antecedent debt in amount not disproportionately small as compared with the value of the property, or obligation obtained." Sec. 2320—3, Stats.

On this proposition they urge that *Mrs. Trickle* had a perfect right to refuse to sign the deed and a right to receive consideration in the event that she consented to release her homestead and dower rights; that after deducting the amount of the mortgages, $36,000, there remained an equity of $29,000. The value of the homestead was proven to be $5,000. It is contended that Trickle and his wife had the undoubted right to hold the homestead or the proceeds

Share v. Trickle, 183 Wis. 1.

under the exemption laws, and that creditors were not concerned as to the manner of its disposition.

It is undoubtedly true that if creditors had levied on the land owned by Trickle the homestead would have been exempt.    If he had conveyed the homestead to his wife before a levy the transfer could not have been successfully attacked.    She could then have conveyed it and given good title.    The evidence shows that *Mrs. Trickle* refused to sign the deed unless she received a consideration therefor.

It is argued by plaintiff's counsel that the homestead interest of *Mrs. Trickle* was contingent only and too uncertain to be treated as a consideration.    But she had such an interest in the homestead that her husband was powerless to convey it without her consent.    Could she not properly refuse her signature unless she received compensation for waiving what to her seemed a valuable right?

It might be suggested that the husband had also an interest in the homestead and that she could not properly be allowed, as against creditors, the whole amount of its value. But we are faced again with the proposition that no creditor could complain of a transfer of property which he could not touch.    As to exempt property there are no creditors within the meaning of the statute.    As another court has said:

"The homestead being forbidden fruit to the creditor which he may not pluck or eat, it is as nothing to him." *Smith v. Fourth St. Bank*, 174 Ky. 647, 192 S. W. 643, 645.

It is unnecessary to cite the great number of cases which support the general rule.    They will be found cited in 12 Ruling Case Law, 505; 27 Corp. Jur. 441; 6 A. L. R. 576; *Fiedler v. Howard*, 99 Wis. 388, 75 N. W. 163; *Allen v. Perry*, 56 Wis. 178, 14 N. W. 3; *Dreutzer v. Bell*, 11 Wis. 114; *Bank of Commerce v. Fowler*, 93 Wis. 241, 67 N. W. 423.

It is argued that the homestead was abandoned and that

there was no proof that there was any intention to use the proceeds for the purchase of another. Of course the homestead may be abandoned and thus made subject to the rights of creditors, or if a fraudulent arrangement is made by which it is attempted to secure a double exemption, that arrangement is open to attack. But we are convinced that if a fair agreement is made between husband and wife preceding the conveyance of the homestead to a third person by which the wife is to receive compensation for the release of her rights, that agreement may be upheld as against creditors of the husband. This view is well sustained by the authorities above cited.

Was *Mrs. Trickle* entitled to compensation for her right of dower? That she had the inchoate contingent right of dower in the land conveyed is beyond doubt. But it is claimed that it was a mere possibility which might be released but could not be made the subject of grant or assignment.

It has been sometimes held that the wife cannot make a release of dower and homestead rights directly to her husband during coverture. *Le Saulnier v. Krueger,* 85 Wis. 214, 54 N. W. 774; *Leach v. Leach,* 65 Wis. 284, 26 N. W. 754; *Wilber v. Wilber,* 52 Wis. 298, 9 N. W. 163. But in this case the release was made to a third person and only after her refusal to release without compensation.

It has long been held that the inchoate right of dower is a valuable right. It is one which every purchaser of real estate recognizes when he secures his title. It is a right which accrues whenever a husband becomes the owner of land, and in this case it preceded any right of the plaintiff.

As is often said, dower is a favorite in the law. The inchoate right will be protected if not released as against the demands of creditors of the husband. For her own protection the wife may justly bargain for and receive fair consideration for the relinquishment of that right, and of this creditors of the husband have no good ground for

complaint. The authorities for this proposition will be found collected in 90 Am. St. Rep. 526; 19 Corp. Jur. 496; 9 Ruling Case Law, 582.

But it is argued that since it is only an inchoate and contingent right its value cannot be determined. The determination of that value is less common and more difficult when dower is inchoate than when it is consummate. It involves the consideration of the ages of two persons instead of one and the consideration of the health and expectancy of life of both. Counsel for defendants compute the dower right as if it were consummate and on that basis claim that it amounts to $6,583. This view cannot be sustained. It disregards the fact that the dower right is only inchoate and in effect converts the wife into a widow. The rule for ascertaining the value in such cases was thus stated in 1839 by Chancellor WALWORTH:

"The annuity tables have furnished the court with the means of ascertaining the probable value of the wife's contingent right of dower during the life of the husband. These tables show the value of annuities which depend not only upon the continuance of single lives of different ages, but upon the continuance of two or more joint lives. The proper rule for computing the present value of the wife's contingent right of dower, during the life of the husband, is to ascertain the present value of an annuity for her life equal to the interest in the third of the proceeds of the estate to which her contingent right of dower attaches, and then to deduct from the present value of the annuity for her life, the value of a similar annuity depending upon the joint lives of herself and her husband; and the difference between those two sums will be the present value of her contingent right of dower." *Jackson v. Edwards,* 7 Paige Ch. 386, 408.

This rule has been followed in other jurisdictions. *Gordon, Rankin & Co. v. Tweedy,* 74 Ala. 232; *Strayer v. Long,* 86 Va. 557, 10 S. E. 574.

After deducting the incumbrances of $36,000 from the

value of the land, Trickle had an equity of $29,000. After the deduction of the amount allowed for the homestead there remained $24,000 on which the inchoate right of dower should be computed, if it is to be allowed. This seemed to be conceded by counsel for both parties.

There is nothing in the testimony to indicate that Mr. and *Mrs. Trickle* were not in average health, and they were aged respectively forty-five and forty years. Pursuant to sec. 3871*m* of the Statutes, we have submitted to the commissioner of insurance a statement of the facts involved and he has caused a computation to be made and has certified, using the basis above stated and the American Experience Table of Mortality, that the present value of the dowable interest is $3,286.98.

There seems to be little question but that the indebtedness of Trickle to his wife, $3,100, should be allowed. The claim as to the $2,000 said to be owing to *Elmer* rests on a different foundation. The testimony as to this claim was quite unsatisfactory. *Elmer* testified that he had advanced to the Trickles at different times approximately $2,000, but that he had no books or notes or anything to show for it. Just before the 28th of February he had urged *Mrs. Trickle* to pay that amount. The trial court found that he had made such advances to his sister and that neither of them had kept any record of the amount.

We do not see on what theory this amount can be allowed in arriving at the consideration for the mortgage to *Mrs. Trickle*. It would be in effect holding that in transactions of this kind between husband and wife, one spouse may pay the debts of the other to the detriment of creditors of the former.

Summing up the situation, we are of the opinion that the homestead right, the inchoate dower right, and the indebtedness of Trickle to his wife, amounting to $11,386.98, should have been allowed in determining the consideration

for the $17,000 mortgage.  The difference between these amounts is so considerable that we cannot hold that there was a fair consideration for the mortgage in question.

It follows that the judgment appealed from should be so modified as to assign and transfer to the plaintiff a share in the $17,000 note and mortgage equal to the difference between the same and the amount above found as the fair consideration for the transfer to *Mrs. Trickle.*

*By the Court.*—Judgment reversed, and cause remanded with direction to enter judgment in accordance with the opinion.