KOPF, Appellant, vs. ENGELKE and others, Respondents.

*December 3, 1941—March 10, 1942.*

For the appellant there were briefs by *Kopp & Brunckhorst* of Platteville, and oral argument by *L. A. Brunckhorst.*

For the respondents there were briefs by *Boyle & Boyle* of Darlington, and *Sanborn, Blake & Aberg, Ernest H. Pett,* and *Edwin Conrad,* all of Madison, and oral argument by *Mr. Wilfred G. Boyle* and *Mr. Pett.*

The following opinion was filed January 13, 1942:

ROSENBERRY, C. J.    The plaintiff and John W. Engelke are sister and brother.    On March 1, 1925, John gave the plaintiff his note for $4,175, due five years after date, in settle-

ment of the plaintiff's share in her father's estate. No part of the principal was ever paid, and on September 12, 1940, all of the principal was due with interest at five per cent from the 1st day of March, 1937, less $225 subsequently paid. Having heard rumors that John was about to convey the premises to Harry, the plaintiff with her husband called upon John and was assured by John and his wife that no such conveyance was contemplated. On the next day, September 13, 1940, John and his wife executed and delivered a chattel mortgage for the sum of $2,302 on all their personal property. On September 14, 1940, plaintiff began suit on her note, the complaint being served personally on September 20, 1940. The son Harry, who lived on an adjoining farm, called for his parents the next morning, September 21st, and together they went to the office of an attorney, having with them Frank O. Robinson, where John and his wife executed a deed to Harry, conveying the farm, the consideration expressed in the deed being $1 and the assumption of a mortgage of $14,000. At the same time John and his wife gave to the Thorp Finance Company a chattel mortgage of $4,555 covering all of the cattle, horses, and machinery owned by John, together with an assignment of the proceeds of an auction sale of the property covered by the chattel mortgage. By these conveyances John parted with the title to all property owned by him. Later, on the same day, John and his wife purchased from Frank O. Robinson an eighteen-acre farm across from the Engelke farm for $4,000. In payment therefor he gave a check for $500, a chattel mortgage for $3,500, and an assignment of the proceeds of the sale of personal property, and a $3,500 mortgage on the eighteen acres purchased. The personal property covered by these mortgages subsequently sold for $7,543.10, the net proceeds amounting to $1,500.15 went to John out of which he claims to have paid $500 upon the Robinson property and all of his debts except that due the plaintiff.

John remained in possession of the farm until the middle of February, 1941. John and his wife claim homestead rights in the two hundred thirty-six acres. The wife claims a dower interest in the farm. John was fifty-five years of age and his wife forty-eight years of age at the time of the transfer. They now claim homestead rights in the eighteen acres which they claim was purchased with the proceeds of exempt personal property.

Upon the trial the court found, in addition to the facts already stated, that John was in poor health; that he had been endeavoring for some time prior to the transactions set out to sell the farm; that the transactions entered into between John and his wife and Harry had been under contemplation for some time; that in addition to assuming the $14,000 mortgage, Harry paid the delinquent taxes amounting to $887, released claim for wages due him from John, amounting to $600, and was to pay the taxes for the year 1940, amounting to $260; that the value of the homestead forty did not exceed $5,000; that the market value of the two-hundred-thirty-six-acre farm was $21,122, the total value of assets, real and personal, was $28,665.10, and in addition to other indebtedness he owed his wife several hundred dollars.

The court found that the sale was not colorable but was a *bona fide* sale for a fair consideration; that considering the liens, the exemption, and the dower right of the wife Edith, John had no equity in the property sold which could be subjected to the claim of the plaintiff, and for that reason the plaintiff suffered no injury or damage by reason of the conveyance. Counsel for plaintiff in their brief make a very vigorous argument in support of the proposition that the trial court should have found that the conveyance made John insolvent; that it was in fraud of creditors, and for that reason it should have been set aside.

Counsel for defendants argue, (1) that the plaintiff was not damaged; (2) that the finding that there was no fraud

in fact is not against the clear preponderance of the evidence; and (3) that a fair consideration was given for the property. Three witnesses for the plaintiff testified that the Engelke farm was worth $100 an acre or $23,600. Another witness for plaintiff testified it was worth $90 to $100 an acre, another that it was worth $93 per acre, another that it was worth $19,260. On behalf of the defendants one witness testified that it was worth from $75 to $80 an acre, another $75 to $85 an acre. The court found the value as already stated at $21,122. The finding is well supported by the evidence.

It is settled in this state that a conveyance of a homestead is not fraudulent to creditors even if a fraudulent intent exists. *Share v. Trickle* (1924), 183 Wis. 1, 197 N. W. 329. See Glenn, Fraudulent Conveyances, p. 234, § 172.

The case of *Allen v. Perry* (1882), 56 Wis. 178, 14 N. W. 3, cited by the plaintiff to the proposition that exempt property may be the subject of a fraudulent conveyance, does not sustain that contention. When analyzed the case holds exactly the opposite. The question there determined was upon whom rested the burden of proof to show the *bona fides* of the transaction. Ordinarily that burden rests upon the wife where property was purchased by her from her husband, but it was held that that rule did not apply to the purchase of exempt property by the wife.

It is a well-established principle of law that an action cannot be maintained to set aside a conveyance as fraudulent unless the plaintiff shall have been injured by the conveyance. Fraud without injury is not enough. See 24 Am. Jur. p. 305, § 173, and cases cited. This seems to be the rule under the Uniform Fraudulent Conveyances Act, ch. 242, Stats. In that chapter assets of a debtor are defined to mean, sec. 242.01 (1):

"property not exempt from liability for his debts. To the extent that any property is liable for any debts of the debtor, such property shall be included in his assets."

Insolvency is defined, sec. 242.02 (1) : "When the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts," etc.

In his reply brief the plaintiff challenges the finding of the trial court as to the value of the Engelke farm. On the record before us that finding cannot be disturbed. While the total value of the improvements far exceeds $5,000, it is a notorious fact that many farms are sold for less than the original cost of the improvements on the farm, and the mere fact that improvements upon the exempt homestead cost more than $5,000 does not prove that the value of the farm is more than $21,122. In this case the court valued the farm as a whole. Deducting the $5,000 exemption, the amount of the mortgage upon the property, the amount of unpaid taxes clearly demonstrates that at the time of the transfer John's equity in the premises was of little or no value, and it was that and that only that was subject to the lien of plaintiff's judgment. Under such circumstances it must be held that Harry gave a fair consideration for the farm, and that the plaintiff was not injured by the transfer, and for that reason cannot maintain this action to set aside the conveyance.

The plaintiff argues that under the decision of the trial court the defendant John and his wife are given the benefit of two homestead exemptions. The right of the defendant John to acquire a new homestead with the proceeds derived from the sale of the first homestead is undoubted, sec. 272.20, Stats. If John chose to use the proceeds derived from the sale of the homestead for the payment of creditors other than the plaintiff, the plaintiff cannot complain for the reason that she had no claim upon such exempt proceeds. Glenn, Fraudulent Conveyances, p. 135, § 173 *et seq.* If the Robinson property was purchased in part by the proceeds derived from the sale of the exempt homestead and in part by proceeds derived from the sale of nonexempt property that does not render

void the conveyance of the Engelke farm. No attempt has been made to levy upon the Robinson tract or to subject it to the payment of plaintiff's claim. The only question for decision here is whether the conveyance of the Engelke farm can be set aside as fraudulent. No substantial interest in that property was subject to the lien of plaintiff's judgment and, as already stated, she was not injured by its conveyance and the trial court correctly so held.

We need not discuss other questions raised in the case.

*By the Court.*—Judgment affirmed.

The following opinion was filed March 10, 1942:

ROSENBERRY, C. J. (*on motion for rehearing*). In the opinion in this case it was stated that the case of *Allen v. Perry* (1882), 56 Wis. 178, 14 N. W. 3, cited by the plaintiff to the proposition that exempt property may be the subject of a fraudulent conveyance did not so hold but held the opposite. On this motion for rehearing counsel for the plaintiff take us to task for that statement. In the interest of clarity it is considered that the position of the court should be made plain. *Allen v. Perry* had to do with personal property claimed to be exempt. The property had been seized upon a writ of attachment by the defendant in an action against plaintiff's husband. The error assigned was the failure of the court to instruct the jury as plaintiff requested. The trial judge had been requested to instruct the jury as to the effect which the fact that the homestead was exempt from a claim of the husband's creditors would have upon the rights of the plaintiff. Upon a sale of the homestead the wife insisted, as a condition of signing the conveyance, that she be awarded a certain part of the proceeds. The money she thus received she invested in a team of horses and harness which were attached by the defendant in an action against the husband. This court said (p. 185):

"Neither she nor her husband have at any time had any team, harness, or wagon which would not be exempt from seizure on attachment if owned by the husband. It is clear, therefore, that under the decisions of this court a sale or transfer of such team, etc., either to a stranger or to his wife, *could not be a fraud upon his creditors.* They would not be entitled to seize the same if it were owned by the husband, and why a transfer by him to his wife while the same continued to be held and used by them could be a fraud upon his creditors we are unable to see. *Very clearly, in the case at bar, if the property had been the property of the husband it would have been exempt from seizure; and so if there had been a sale of the property which was intended to be a fraud upon the husband's creditors, still, if at the time of the seizure of them by the sheriff the husband had no other property of that kind upon which he could claim an exemption, the effect of holding the sale void as to his creditors would only leave the title in the husband, and being still in him, and he having no other property of like kind to which the exemption could attach, it would still remain exempt.*" (Citing.)

This disposed of the case so far as dealing with the exempt property was concerned, but the court went on to comment upon *Carhart v. Harshaw* (1878), 45 Wis. 340, as to which as appears from the dissenting opinion in *Allen v. Perry, supra,* there was some controversy between the members of the court, and it there pointed out that where there was a mere colorable sale of the exempt property either of homestead or personal property, to enable the grantor to claim a double exemption, that such a sale was fraudulent in law and would be set aside. That was also the question in *Carver v. Lassallette* (1883), 57 Wis. 232, 15 N. W. 162. The effect of the holding in each of these cases is that a transfer of exempt property is not subject to be set aside by a creditor. It is only when a transfer is not effective and merely colorable, that is in reality not a conveyance at all, and is made for the purpose of enabling the transferor to claim a double exemption that the law interferes. An actual sale divests the seller of his

title and the conveyance of the homestead is not subject to attack on the ground that it is fraudulent as to creditors. In the case at bar the plaintiff attacked the transfer of the entire farm which included the homestead as merely colorable. The trial court found against the plaintiff upon that question and the finding was sustained by this court. There being no colorable transfer the plaintiff was not entitled to maintain an action to set aside the deed of the farm or the homestead.

It may be that the statement made in the opinion would have been more accurate if we had said that a conveyance of exempt property is not subject to attack by creditors as fraudulent. It is only when the homestead is dealt with in connection with other property owned by the defendant for the fraudulent purpose of giving the grantor the benefit of two homesteads that the transaction is subject to scrutiny in behalf of creditors. While we do not find any decision directly upon the question it appears from the quotation that even under those circumstances if the transfer is set aside, the exemption attaches in which event it would leave the property claimed as the second homestead subject to the lien of a judgment.

We are asked to again review the evidence as to value and to pass upon the rights of the plaintiff under her judgment to the eighteen-acre tract which John W. Engelke and his wife now claim as a homestead. As we pointed out in the opinion that is a question not within the pleadings and not tried in the court below and therefore not subject to determination here. We have re-examined the evidence and discover no reason for changing our determination that the evidence sustains the findings of the trial court.

*By the Court.*—The motion for rehearing is denied with $25 costs.