LUEPTOW (Ora), Plaintiff and Appellant: LUEPTOW
(Frieda) and others, Plaintiffs, v. GUPTILL and wife,
and others, Defendants: PRODUCTION CREDIT ASSOCI-
ATION, Defendant and Respondent.

*No. 197. Argued October 31, 1972.—Decided November 28, 1972.*
(Also reported in 202 N. W. 2d 255.)

398

For the appellant there was a brief and oral argument by *Frank C. Lisheron, Jr.*, of Princeton.

For the respondent there was a brief by *Tonjes & Mortensen* of Fond du Lac and oral argument by *Carl M. Mortensen.*

WILKIE, J. Two issues are raised on this appeal:

1. Were the Guptills entitled to claim a homestead exemption in the land in question?

2. The Guptills not claiming a homestead exemption, could their mortgagee, Production Credit Association, claim that homestead exemption?

1. *Were the Guptills able to claim a homestead exemption?* It is undisputed, absent the statutory homestead exemption, a judgment which is properly docketed creates a superior lien on real property for a period of ten years.[1] In this situation, therefore, the cognovit judgment belonging to Lueptow which was docketed first is superior to the later recorded mortgage of respondents Production Credit Association.

The trial court, Lueptow contends, erroneously ordered the Production Credit Association mortgage to have priority over the cognovit note. Lueptow argues that in reaching this conclusion the trial court wrongly determined that the Guptills were entitled to a homestead exemption under the Wisconsin statutes. Arguing (1) that the Guptills had no equity in the property which they had occupied, (2) that they did not receive any

[1] Sec. 270.79 (1), Stats. *See also: R. F. Gehrke Sheet Metal Works v. Mahl* (1941), 237 Wis. 414, 297 N. W. 373.

funds from the sale of that land with which to procure another homestead, and (3) that they had abandoned the property as their homestead before the commencement of this action, Lueptow urges that the Guptills could claim no homestead exemption.

Sec. 272.20 (1), Stats., defines the homestead exemption:

"An exempt homestead as defined in s. 990.01 (14) [2] *selected by a resident owner and occupied by him shall be exempt* from execution, from the lien of every judgment and from liability for the debts of such owner to the amount of $10,000, except mortgages, laborers', mechanics' and purchase money liens and taxes and except as otherwise provided. *Such exemption shall not be impaired by temporary removal with the intention to reoccupy the premises as a homestead nor by the sale thereof, but shall extend to the proceeds derived from such sale to an amount not exceeding $10,000, while held, with the intention to procure another homestead therewith, for 2 years. . . .*" (Emphasis supplied.)

In answer to Lueptow's first supportive argument— that the Guptills had no equity in the property—the record indicates the contrary. It is true that at the time of the Guptills' execution of their mortgage with Production Credit Association the balance they yet owed to the Lueptows under the land contract was more than the initial land contract sale price.

It has long been acknowledged, however, that the vendee in a land contract has an equitable interest in the real estate.[3] Further, it has been noted that such land contract vendee is entitled, after a default and

---

[2] Sec. 990.01 (14), Stats.: "HOMESTEAD EXEMPTION. The words 'exempt homestead' mean that part of the homestead within the limitation as to value set forth in s. 272.20, except as to liens attaching or rights of devisees or heirs of persons dying before the effective date of any increase of that limitation as to value."

[3] *Henry Uihlein Realty Co. v. Downtown Development Corp.* (1960), 9 Wis. 2d 620, 628, 101 N. W. 2d 775.

vendor's suit for the unpaid purchase price, to any surplus in excess of the land contract price.[4] In the instant case, the land was worth substantially more than the initial land contract purchase price. To say, as does Lueptow, that the Guptills had no "equity" in the land is probably true. They do, however, have an interest in the land. The homestead statute expressly provides that it extends "to any estate less than a fee." [5] The Guptills' interest in the subject matter of their land contract, while perhaps not substantial and less than a fee, is an interest in the land within the meaning of this statute.[6]

Lueptow also argues that the Guptills are unable to claim the homestead exemption in the proceeds of the sale of the property because they did not receive any of such proceeds with which they might "procure another homestead therewith, for 2 years." [7] Here, Lueptow's contention has been refuted by this court in *Kopf v. Engelke*.[8] In *Kopf*, an action by a judgment creditor to set aside a conveyance of defendant's farm to his son as fraudulent, this court held a judgment creditor, who falls within the purview of the exemption statute, has no right to complain about the exempt person's disposition of the proceeds of the sale of the homestead:

"The plaintiff argues that under the decision of the trial court the defendant John and his wife are given the benefit of two homestead exemptions. The right of the defendant John to acquire a new homestead with the proceeds derived from the sale of the first homestead is undoubted, sec. 272.20, Stats. If John chose to use the proceeds derived from the sale of the homestead for the payment of creditors other than the plaintiff, the

[4] *Kallenbach v. Lake Publications, Inc.* (1966), 30 Wis. 2d 647, 651, 142 N. W. 2d 212.

[5] Sec. 272.20 (1), Stats.

[6] *See also: Northwestern Securities Co. v. Nelson* (1927), 191 Wis. 580, 583, 211 N. W. 798.

[7] Sec. 272.20 (1), Stats.

[8] (1942), 240 Wis. 10, 1 N. W. 2d 760, 2 N. W. 2d 846.

plaintiff cannot complain for the reason that she had no claim upon such exempt proceeds." [9]

A similar situation exists in the instant case. Lueptow is precluded, under the homestead exemption statute, from executing his judgment lien against the homestead of the Guptills. The Production Credit Association, the mortgagee, is not so precluded and would be able to foreclose or use some other suitable remedy even as against the Guptills' homestead.

Also refuting Lueptow's argument is the case of *Clancey v. Alme*.[10] *Clancey* involved a mortgage foreclosure of both exempt and nonexempt lands. The value of the whole property was much more than the mortgage, and the appellant-judgment creditor claimed such surplus. This court held the proceeds of the sale, under the liberal spirit of the exemption laws, were exempt from the judgment creditor's claim. The court further affirmed the trial court's direction of the payment of the surplus to the mortgagor as within the statute's "procure another homestead" wording.

We conclude, therefore, that the Guptills could validly exercise their homestead exemption in the proceeds of a sale of such homestead in order to forward such surplus to their mortgagee. This is precisely what occurred in the *Clancey Case*.

Lueptow's final argument is an asserted abandonment of such homestead. The statute provides a homestead exemption to a resident owner who occupies the homestead.[11] Lueptow argues that the Guptills were not such owners and occupiers of the premises at the time of the sale or at the time of the commencement of this foreclosure action. The record is to the contrary and the trial court found that the Guptills were occupying the premises as a homestead on the dates the cognovit note

---

[9] *Id.* at page 15.
[10] (1898), 98 Wis. 229, 73 N. W. 1014.
[11] Sec. 272.20 (1), Stats.

and mortgage were filed. Moreover, at the hearing it was stipulated by counsel for Lueptow that the Guptills occupied the premises until August of 1969.

As early as *Upman v. Second Ward Bank*,[12] decided in 1862, the key date upon which a household had to have been resided in was the date on which the judgment was docketed. In the words of this court:

"Under the statutes of this state, a judgment of a court of record becomes a lien upon the debtor's real estate, situated in the county where the judgment roll or transcript of the judgment is filed. . . .

". . .

". . . If the property is not a homestead when the judgment is obtained, it is a lien upon it. . . ."[13]

This was also reiterated in *Eloff v. Riesch:*[14]

"It is conceded that when the judgment was docketed in April, 1955, the property was occupied by both Edward and Rosemary as their homestead. The value of their combined equity was $3,196.62. Edward's interest was clearly exempt from the judgment lien at that date."

2. *May the mortgagee of the Guptills exercise the right to the homestead exemption?* Lueptow argues that the Guptills did not exercise their homestead exemption. They further argue that the Production Credit Association, mortgagee of the Guptills, cannot stand in their shoes so as to exercise such right.

It is unnecessary, however, to determine whether the mortgagee herein may "stand in the shoes" of the Guptills in order to reap the advantage of the Guptills' homestead exemption. This court has long held the right to the homestead exemption does not depend upon its formal exercise. This is nowhere more clearly stated than in *Martin v. C. Aultman & Co.*[15] wherein the fact

[12] (1862), 15 Wis. 492 (*450).
[13] *Id.* at pages 495, 496 (*452, *453).
[14] (1961), 14 Wis. 2d 519, 524, 111 N. W. 2d 578.
[15] (1891), 80 Wis. 150, 154, 49 N. W. 749.

of occupancy was held sufficient to indicate one's declaration of homestead exemption:

"It is claimed by the counsel for the defendant that the plaintiff has no right to a homestead in any of these lands. But the fact is abundantly established that the judgment debtor occupied the ninety-nine acres which she conveyed as and for a homestead for some years before she made the conveyance to the plaintiff. . . . Now, as no selection of a homestead was made when the execution sale took place in December, 1887, though the plaintiff might then have claimed a homestead and had the officer set the premises selected apart to him, we still think he can have a homestead right. . . ."

This mere occupancy rule was also held to be a sufficient exercise of the homestead exemption right in *Larson v. State Bank of Ogema*.[16] In that case this court held Larson had tacitly selected the land upon which his dwelling stood absent any formal declaration:

"[S]uch use and occupancy themselves evidence the selection by the owner of all of such contiguous land as his homestead, and constitute notice to all of its character as his homestead, and of his selection thereof as such, without his giving any other notice."[17]

It follows from these holdings of mere occupancy and use constituting an exercise of the homestead exemption that the exemption, in the instant case, was properly exercised by the Guptills' residence on the real estate at the time of the docketing of Lueptow's cognovit judgment. The exemption having been exercised by mere occupancy, it is unnecessary to determine whether the mortgagee of the Guptills may so exercise the exemption in their stead.

The homestead exemption statute itself permits a mortgagee to have a mortgagor's homestead exemption declared:

---

[16] (1930), 201 Wis. 313, 230 N. W. 132.

[17] *Id.* at page 318.

"(2) Any owner of an exempt homestead against whom a judgment has been rendered and docketed, and any heir, devisee or grantee of such owner, or any mortgagee of such homestead, may proceed under s. 269.56 for declaratory relief if such homestead is less than $10,000 in value and the owner of such judgment shall fail, for 10 days after demand, to execute a recordable release of such homestead from his judgment lien."[18]

Thus, a mortgagee may have the homestead exemption declared on the mortgaged premises.

Lueptow also suggests that the theory of the homestead exemption is defeated by allowing a creditor to take a mortgage for an antecedent debt and effectively defeat the mortgagors' exemption. Such defect, if any, is with the statute itself rather than its interpretation. The exemption statute expressly excepts mortgagees from the operation of the exemption.

Lueptow's final contention involves the amount which was forfeited by the first prospective purchaser and the balance of the receiver's funds. Lueptow asserts that the sum of $1,310.67 should not be subject to the homestead exemption and, therefore, should be awarded to him. The Production Credit Association contradicts Lueptow's computation (supported by the record), stating that of the $310.67 receiver's funds, a total of $277.97 in expenses was incurred.

The question of whether a forfeiture sum may be included in the exempt proceeds of a homestead sale has not been decided by this court. This court has, however, stated that any excess moneys from a sale of the subject matter of a land contract (specific performance) belong to the vendee. The vendor is only entitled to the contract price plus costs and disbursements in such a sale.[19]

[18] Sec. 272.20 (2), Stats.

[19] *See Kallenbach v. Lake Publications, Inc.* (1966), 30 Wis. 2d 647, 651, 142 N. W. 2d 212.

We conclude that the moneys presently held by the clerk of courts are the proceeds of a sale of the homestead and subject to the homestead exemption of the Guptills.

*By the Court.*—Order affirmed.