In re Donald Steven **BARNHART** and Linda M. Barnhart, Debtors.

**William Todd Drown, Plaintiff,**

v.

**JPMorgan Chase Bank, N.A., et al., Defendants.**

**Bankruptcy No. 09–58996. Adversary No. 09–2452.**

United States Bankruptcy Court, S.D. Ohio, Eastern Division, at Columbus.

March 30, 2011.

William Todd Drown, Mount Vernon, OH, Attorney for Plaintiff.

Maria C. Mariano Guthrie, Attorney for Defendants, JPMorgan Chase Bank, NA and Chase Home Finance, LLC.

Nannette JB Dean, Columbus, OH, Attorney for Debtors.

### MEMORANDUM OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

JOHN E. HOFFMAN, JR., Bankruptcy Judge.

### I. Introduction

In this adversary proceeding, Chapter 7 trustee William Todd Drown ("Trustee")

contends that debtor Linda Barnhart's interest in real property located at 7947 Glenmore Drive, Powell, Ohio ("Property") is superior to the interest that defendant Chase Home Finance, LLC ("Chase") holds in the Property by virtue of two mortgages.[1] Linda's husband and joint debtor, Donald Barnhart,[2] obtained title to the Property after they were married by a deed on which he was the sole grantee, and Linda apparently never obtained an ownership interest in the Property. Linda's interest in the Property, therefore, is limited to a dower interest. Because Donald is still living, Linda's dower interest ("Dower Interest") is a contingent—commonly known as an "inchoate"—interest.

Prior to the date on which the Debtors commenced their bankruptcy case ("Petition Date"), Donald encumbered the Property with two mortgages now held by Chase, which the Court will refer to as the "First Mortgage" and the "Second Mortgage."[3] There are a number of irregularities with the First Mortgage. Although Linda initialed each page of the First Mortgage (other than the signature page)

---

1. The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. The adversary proceeding is a core proceeding. See 28 U.S.C. § 157(b)(2)(K).

2. For ease of reference, the Court will refer to the Barnharts individually by first name and collectively as the "Debtors."

3. The First Mortgage (copy attached as Exhibit B to the Complaint (Doc. 1)) describes the Borrower as "D STEVEN BARNHART, UNMARRIED" (even though Linda signed it as "Linda M. Barnhart," which would suggest that they were married at the time). The Second Mortgage (copy attached as Exhibit C to the Complaint), which was signed approximately two years after the First Mortgage, describes the Grantor as "DS BARNHART AKA D STEVEN BARNHART, A SINGLE

PERSON[.]" The Debtors' marital status at the time the mortgages were granted is relevant to the priority of the Dower Interest. See Greene v. William Greene & Co., 1 Ohio 535, 541 (1824) (holding that a dower interest is "subject to all incumbrances existing [against the real property] at the time of the marriage"). The Court, however, need not resolve the apparent factual issue raised by the statements in the mortgages regarding Donald's marital status because the Trustee and Chase have stipulated that "Debtor D. Steven Barnhart has been married to Debtor Linda M. Barnhart during all times relevant to this case and continues to be married to Debtor Linda M. Barnhart." Motion of Defendant Chase Home Finance, LLC for Partial Summary Judgment on the Issue of Calculation of the Present Value of a Dower Interest ("Chase Motion") (Doc. 15) at 3. See also Plaintiff's Amended Motion for Partial Summary Judgment ("Trustee's Motion") (Doc.

and although she signed the First Mortgage on the signature page over a line with the pre-printed word "Borrower" (despite not being identified as a Borrower on the first page), she did so with no indication of the reason she was signing the First Mortgage (*e.g.*, that she was releasing her Dower Interest), and the certificate of acknowledgment on the First Mortgage identified Donald but failed to identify Linda as a person whose signature was being acknowledged.[4]

There also are irregularities with the Second Mortgage. Linda was nowhere identified on the Second Mortgage and, although the Trustee asserts that she signed the Second Mortgage without her name appearing in the certificate of acknowledgment on that mortgage, *see* Tr.'s Mot. at 3, a review of the Second Mortgage reveals that, while the Trustee is correct that Linda was not identified in the certificate of acknowledgment, it is likely that she was not identified in the certificate because she did not, in fact, sign the Second Mortgage at all.

The Trustee contends that the mortgages do not encumber the Dower Interest and that, even if they do, he can (1) avoid Linda's release of the Dower Interest under § 544(a) of the Bankruptcy Code and (2) sell the Property free and clear of Chase's interest in the Property. Agreeing to table for the time being the ultimate question of whether the Trustee can obtain this relief under the Bankruptcy Code, the parties have filed motions for partial summary judgment on the issue of the appropriate method for calculating the actuarial present value—which the Court will refer to in this order simply as the present value[5]—of the Dower Interest as of the Petition Date ("Dower–Valuation Issue").[6]

16) at 3. The parties are bound by their factual stipulations. *See Christian Legal Soc'y v. Martinez*, —— U.S. ——, ——, 130 S.Ct. 2971, 2983, 177 L.Ed.2d 838 (2010) ("[F]actual stipulations are formal concessions ... that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact. Thus, a judicial admission ... is conclusive in the case." (internal quotation marks omitted)).

4. As described below, Linda, as well as Donald, signed the promissory note secured by the First Mortgage.

5. Present value depends on the interest rate used to discount a benefit to be received in the future to take into account the time value of money. Actuarial present value depends not only on a discount rate, but also on the probability that the benefit will be received. *See West v. AK Steel Corp. Ret. Accumulation Pension Plan*, No. 1:02–CV–0001, 2005 WL 3465637, at *3 (S.D.Ohio Dec.19, 2005) (noting that the concept of actuarial present value "take[s] account of both the probability that a payment will be made, and the discount for the time value of money").

6. The Court may grant partial summary judgment under Federal Rule of Civil Procedure 56 ("Civil Rule 56"), made applicable in this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R.Civ.P. 56(a) ("A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion."). Pursuant to an amendment to Civil Rule 56 that became effective on December 1, 2010 (after this adversary proceeding was commenced), the summary judgment standard now appears in Civil Rule 56(a) rather than, as it formerly did, Civil Rule 56(c). *See* Fed.R.Civ.P. 56(a) advisory committee's note (2010 Amendments) ("Subdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c)...."). The Court is citing the amended rule given that application of "the amended version of [Civil] Rule 56 in this case is just and practicable and would not work a manifest injustice, because the amendments do not change the summary judgment standard or burdens." *Farmers Ins. Exch. v.*

The Trustee contends that the proper method for calculating the present value of the Dower Interest as of the Petition Date must take into account the age of the person who holds the interest—Linda—without taking into consideration the age of the owner of the Property, Donald. Using his proposed method, the Trustee asserts that the present value of the Dower Interest as of the Petition Date is $52,491.87. *See* Tr.'s Mot. at 5. By contrast, Chase argues that the present value of the Dower Interest as of the Petition Date must be based on the ages of both spouses. Using its proposed method, Chase asserts that the present value of the Dower Interest as of the Petition Date is $6,538.18. *See* Chase Mot. at 6. As explained below, the Court concludes that partial summary judgment on the Dower–Valuation Issue must be entered against the Trustee and in favor of Chase.

## II. Relevant Bankruptcy–Law Principles

■■■ Applicable state law governs the extent of a person's interest in property when the Bankruptcy Code does not directly do so. *See Kildow v. EMC Mortg. Corp. (In re Kildow)*, 232 B.R. 686, 693 (Bankr.S.D.Ohio 1999) ("When analyzing the validity, priority, or extent of interests in property, state law controls." (citing *Butner v. United States*, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979))). The Bankruptcy Code does not directly address a debtor's interest in his or her right to a distribution on account of a dower interest. As a result, applicable state law—here, the law of Ohio—governs the extent of Linda's right to a distribution on account of the Dower Interest. And the Court must apply "state law in accordance with the controlling decisions of the state supreme court." *Allstate Ins. Co. v. Thrifty Rent–A–Car Sys., Inc.*, 249 F.3d

450, 454 (6th Cir.2001). *See also Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("[S]tate courts are the ultimate expositors of state law, and ... we are bound by their constructions except in extreme circumstances not present here." (citations omitted)).

■■■ It is well established that an inchoate dower interest in real property is property of the estate of the debtor who holds the interest. *See, e.g., In re Rudicil*, 343 B.R. 181, 184 (Bankr.S.D.Ohio 2006); *In re Wycuff*, 332 B.R. 297, 301 (Bankr. N.D.Ohio 2005); *Gilbert v. Castor (In re Castor)*, 99 B.R. 807, 812 (Bankr.S.D.Ohio 1989). Thus, the Dower Interest is property of Linda's bankruptcy estate. As a general rule, a Chapter 7 trustee "succeeds only to the title and rights in property that the debtor had and takes the property subject to the same restrictions that existed at the time the debtor filed the petition." *Demczyk v. Mut. Life Ins. Co. of New York (In re Graham Square, Inc.)*, 126 F.3d 823, 831 (6th Cir.1997); *see also Rhiel v. OhioHealth Corp. (In re Hunter)*, 380 B.R. 753, 780 (Bankr.S.D.Ohio 2008) (same). Because this rule is subject to the Trustee's "authority to enlarge the bankruptcy estate" under provisions of the Bankruptcy Code such as § 544, *Hunter*, 380 B.R. at 780 (internal quotation marks omitted), and because the Trustee is seeking to avoid Linda's purported release of the Dower Interest under § 544, the Court will assume, for the sake of this opinion only, that the Trustee's avoidance action could succeed.

## III. Preliminary Consideration of the Potential Mootness of the Dower–Valuation Issue

A provision of the Ohio statute on which the Trustee relies in support of his position

*RNK, Inc.*, 632 F.3d 777, 782, n. 4 (1st Cir. 2011).

on the Dower–Valuation Issue suggests a possibility that—if certain facts exist— there might be no recovery for unsecured creditors even if the Trustee were to prevail on the Dower–Valuation Issue. Although the Court may "decide a purely legal question on summary judgment based on facts assumed to exist[,]" *Drown v. Wells Fargo Bank, N.A. (In re Scott),* 424 B.R. 315, 326 (Bankr.S.D.Ohio 2010), and in the end will do so here by assuming that the facts are such that the Trustee would be able to make a distribution to unsecured creditors if he were to prevail on the Dower–Valuation Issue, the parties should bear the issues discussed below in mind as they seek a resolution or other disposition of the adversary proceeding following this ruling on partial summary judgment.[7]

In analyzing whether there is any possibility that, were it to rule in the Trustee's favor on the Dower–Valuation Issue, unsecured creditors might receive a distribution as a result, the starting point is the primary statute on which the Trustee relies in support of his position on the Dower–Valuation Issue, Ohio Revised Code § 2103.041. *See* Tr.'s Mot. at 6. This section provides as follows:

> In any action involving the judicial sale of real property for the purpose of satisfying the claims of creditors of an owner of an interest in the property, the spouse of the owner may be made a party to the action, and the dower interest of the spouse, whether inchoate or otherwise, may be subjected to the sale without the consent of the spouse. The court shall determine the present value and priority of the dower interest in accordance with section 2131.01 of the [Ohio] Revised Code and shall award the spouse a sum of money equal to the present value of the dower interest, to be paid out of the proceeds of the sale according to the priority of the interest. To the extent that the owner and the owner's spouse are both liable for the indebtedness, the dower interest of the spouse is subordinate to the claims of their common creditors.

Ohio Rev.Code Ann. § 2103.041 (West 2011). The parties have focused on the requirement imposed by this section that "[t]he court shall determine the present value and priority of the dower interest in accordance with section 2131.01 of the [Ohio] Revised Code[.]" *Id.* The Court will address that requirement in Sections V and VI below. As discussed below, however, § 2103.041 of the Ohio Revised Code also makes the dower-holding spouse's entitlement to a distribution on account of a dower interest "subordinate to the claims" of the "common creditors" of both spouses if both are liable for the indebtedness. *Id.*

As an initial matter, the Court notes that Ohio Revised Code § 2103.041 provides that an award, if any, to the dower-holding spouse will be paid "out of the proceeds" of a judicial sale. *Id.* Here, there are two potential ways that the parties might achieve a judicial sale of the Property. First, Chase filed a motion for

---

**7.** If there were no possibility at all that a resolution of the Dower–Valuation Issue in favor of the Trustee could result in a distribution to unsecured creditors, the issue would be of no practical significance to the Debtors' bankruptcy estates and therefore would be moot. *Cf. Finstad v. Florida, Dep't of Bus. & Prof'l Regulation,* 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues would have no practical significance."). Accordingly, although the parties have not raised the preliminary issue discussed in this section of the order, it is appropriate for the Court to do so given that courts should not decide issues that are clearly moot. *See Ahmed v. Univ. of Toledo,* 822 F.2d 26, 27 (6th Cir.1987) ("It is fundamental that we may not decide moot issues.").

relief from the automatic stay of § 362(a) with respect to the Property ("Stay Relief Motion"), see Doc. 11 in Case No. 09–58996, which the Court granted by an order entered on September 9, 2009. See Doc. 13 in Case No. 09–58996. The order granting the Stay Relief Motion authorizes Chase to take the steps necessary to seek a judicial sale of the Property in a state court of competent jurisdiction.[8] Second, the Trustee contends that he is "entitled to sell the Property under § 363(f), free and clear of any interest in the Property of [Chase and the other defendants ("Defendants")] because the interest of Defendants is in bona fide dispute." Compl. ¶ 30. The Trustee has not yet filed a motion on notice to all creditors seeking authority to sell the Property, and Chase might dispute his authority to sell the Property free and clear of its interest. See Answer of Defendant Chase Home Finance, LLC to Complaint by Trustee to Avoid Mortgage and to Preserve Avoided Liens and to Sell Property Free and Clear of All Liens (Doc. 5) at 5–6. The Court, though, need not address the issue of whether the Trustee would be entitled to sell the Property. Rather, the Court will assume, for the purposes of this decision only, that the Property could be sold at a judicial sale. If such a sale generated proceeds sufficient to both satisfy Chase's claims in full and distribute a surplus to the Trustee in an amount equal to his valuation of the Dower Interest, then there would be no dispute between the parties, and the Dower–Valuation Issue would be moot. Thus, for purposes of resolving the Dower–Valuation Issue, the Court also will assume that a sale of the Property would generate insufficient proceeds to both satisfy Chase's claims in full and make a distribution to the Trustee in an amount equal to his valuation of the Dower Interest.

This brings the Court to the restriction set forth in Ohio Revised Code § 2103.041 on a distribution to be made on account of a dower interest, which is that any award to the dower-holding spouse will be paid "according to the priority of the interest." Ohio Rev.Code Ann. § 2103.041. In this regard, the statute further provides that "[t]o the extent that the owner and the owner's spouse *are both liable for the indebtedness, the dower interest of the spouse is subordinate to the claims of their common creditors.*" *Id.* (emphasis

8. Despite obtaining relief from the automatic stay, Chase would be obligated to return the proceeds of a sale of the Property to the Trustee to the extent that they exceed the amount to which Chase is entitled. *See Catalano v. Comm'r*, 279 F.3d 682, 686–87 (9th Cir.2002) ("When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property. Although the property may pass from the control of the estate, that does not mean that the estate's interest in property is extinguished. Relief from an automatic stay entitles the creditor to realize its security interest ... in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee. Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and the act of lifting the automatic stay is not analogous to an abandonment of the property." (citations and internal quotation marks omitted)). Here, the Trustee has not abandoned the Property, which therefore remains property of each Debtor's estate to the extent of his or her interest. Thus, the fact that Chase has obtained relief from the automatic stay does not in and of itself make the Dower–Valuation Issue moot. In addition, relief from stay does not divest this Court of jurisdiction over the Dower–Valuation Issue. *See Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 383 (6th Cir.2001) ("[I]f the bankruptcy court grants relief from the stay with respect to certain property or claims the bankruptcy court retains jurisdiction over those matters, although its jurisdiction is concurrent with that of other courts of competent jurisdiction." (citation omitted)).

added). This provision applies if both the spouse with title to the Property (here, Donald) and the spouse with the dower interest (here, Linda) signed a promissory note evidencing the debt.

■ That is what occurred here, at least in part. The note secured by the First Mortgage ("Note") is attached to the Stay Relief Motion. *See* Exhibit A to Doc. 11 in Case No. 09–58996.[9] Both Linda and Donald signed the Note. And paragraph 9 of the Note states in part that "[i]f more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed." Thus, both Donald and Linda are liable for indebtedness owed to Chase that is secured by the First Mortgage, and the Dower Interest accordingly is subordinate to the claims of Chase in connection with a judicial sale of the Property. Under Ohio Revised Code § 2103.041, Linda's signing of the Note did not release the Dower Interest in favor of Chase. *See Airlines Reporting Corp. v. Lambert (In re Lambert)*, 57 B.R. 710, 713 (Bankr.N.D.Ohio 1986) (stating that the provision of § 2103.041 "subordinating a dower interest of a spouse to common creditors' interests when both spouses are liable on a debt merely state[s] a rule of priority governing the dower interest and, consequently, recognizes the continued existence of that dower interest"). Because Linda signed the Note, however, the Dower Interest is subordinate to the claims of Chase under the Note in the context of a judicial sale under Ohio Revised Code § 2103.041. And, under the bankruptcy-law principles discussed in Section II above, if the Dower Interest in the hands of Linda would be subordinate to the claims of Chase under the Note pursuant to Ohio Revised Code

§ 2103.041, then the Dower Interest in the hands of the Trustee would be subordinate to such claims of Chase as well.

■ If Chase's claims against the Debtors were the only claims that were relevant in the judicial-sale context, then Linda's bankruptcy estate would be entitled to an award on account of the Dower Interest after Chase's claims were satisfied in full. But § 2103.041 of the Ohio Revised Code makes the Dower Interest subordinate to the claims of all the "common creditors" of the Debtors. Ohio Rev.Code Ann. § 2103.041. And creditors in addition to Chase have filed proofs of claim against both of the Debtors. The Court is not inclined, unless the parties consent, to take judicial notice of the accuracy of those proofs of claim. *See Hylland v. Nw. Corp. (In re Nw. Corp.)*, 319 B.R. 68, 74 n. 1 (D.Del.2005) ("[T]he Court cannot take judicial notice of the contents of the filing, but only of the fact that a proof of claim was filed."); *In re Kmart Corp.*, 362 B.R. 361, 372 n. 9 (Bankr.N.D.Ill.2007) ("The court takes judicial notice of entries on the Docket and the contents of documents filed in the bankruptcy case, but not the truth of the facts asserted in those documents."), *aff'd sub nom. Philip Morris Capital Corp. v. Kmart Corp.*, No. 07 C 1926, 2007 WL 3171316 (N.D.Ill. Oct.24, 2007). For purposes of this opinion only, however, the Court assumes that, in addition to Chase, there are other common creditors of the Debtors to which the Dower Interest is subordinate under § 2103.041 and further assumes that these creditors, together with Chase, would be entitled to a distribution on account of the Dower Interest.

Another preliminary consideration is that the Debtors apparently used the Property as their residence as of the Peti-

---

**9.** The promissory note secured by the Second Mortgage has not been filed with the Court in the Debtors' bankruptcy case or in this adversary proceeding.

tion Date and continue to do so. Linda, therefore, may be entitled to claim an exemption in the Dower Interest under Ohio Revised Code § 2329.66(A)(1)(b). *See Rudicil*, 343 B.R. at 184; *Wycuff*, 332 B.R. at 301–02; *Castor*, 99 B.R. at 813–14. Although she has not yet claimed such an exemption, and the Court therefore need not decide whether she is entitled to it, the Court does note that "[a] debtor has the general right to amend his or her schedules 'as a matter of course at any time before the case is closed.'" *In re Waller*, 424 B.R. 306, 312 (Bankr.S.D.Ohio 2010) (quoting Fed. R. Bankr.P. 1009(a)), *aff'd*, —— B.R. ——, No. 10–8016, 2010 WL 3521956 (B.A.P. 6th Cir. Sept. 7, 2010).

■ In sum, for purposes of deciding the Dower–Valuation Issue, the Court assumes that Chase is not the only common creditor of the Debtors to which the Dower Interest is subordinate under § 2103.041 and further assumes that a ruling in favor of the Trustee may result in a distribution to creditors in addition to Chase, even after Linda's potential exemption is taken into account. In light of these assumptions, the Dower–Valuation Issue is not necessarily moot. In addition, given the parties' stipulations regarding the fair market value of the Property ($295,000); Donald's sole ownership of it; the Debtors' marital status at all relevant times; the dates of birth of the Debtors (and by extension their ages as of the Petition Date, 51 for Donald and 56 for Linda); and the interest rate to be used in calculating the present value of the Dower Interest (3.4%), there is no genuine dispute as to any material fact. The Court, therefore, will proceed to consider the merits of the Dower–Valuation Issue in the context of the parties' requests for partial summary judgment.

## IV. Relevant State–Law Principles Regarding Inchoate Dower

■ As noted above, Ohio Revised Code § 2103.041 provides that dower interests, "whether inchoate or otherwise, may be subjected to the [judicial] sale without the consent of the spouse." Ohio Rev.Code Ann. § 2103.041. For the reasons explained below, the Dower Interest is an inchoate—rather than a choate—interest, and the present value of the Dower Interest must be calculated in light of its inchoate nature.

■ Although it once applied only to wives, the right of dower in Ohio today is a right of both husbands and wives. *See Deutsche Bank Trust Co. Ams. v. Smith*, No. 89738, 2008 WL 2349289, at *1 n.1 (Ohio Ct. App. June 09, 2008). The right of dower is "an estate for life [of one spouse] in one third of the real property of which the [other spouse] was seized as an estate of inheritance at any time during the marriage." Ohio Rev.Code Ann. § 2103.02. Based on the nature of dower as a life estate, the Trustee asserts that the only age that is relevant to the valuation of the Dower Interest is Linda's because the Dower Interest is already vested. *See* Plaintiff's Response to Motion of Defendant Chase Home Finance, LLC for Partial Summary Judgment on the Issue of Calculation of the Present Value of a Dower Interest (Doc. 18) at 9 ("Trustee's Response"). Chase counters that an inchoate dower interest "vests only upon the owner-spouse's death[.]" Response of Defendant Chase Home Finance, LLC to Plaintiff William Todd Drown's Amended Motion for Summary Judgment ("Chase Response") (Doc. 17) at 4.

To be precise, under current Ohio law, the Dower Interest is a vested, inchoate interest. In order to explain why this is so, a brief history of Ohio dower law is in order. Prior to January 1, 1932, Ohio law

provided that " '[a] *widow or widower* ... shall be endowed of an estate for life in one-third of all the real property of which the deceased [spouse] was seized as an estate of inheritance at any time during the marriage....' " *Goodman v. Gerstle,* 158 Ohio St. 353, 109 N.E.2d 489, 490 (1952) (emphasis added) (quoting Section 8606 of the Ohio General Code). Because the pre-January 1, 1932 statute endowed a widow or widower with the right of dower, the right arguably came into existence, and thus was vested, only upon the death of the property-holding spouse. *See Miller's Adm'r v. Woodman,* 14 Ohio 518, 520 (1846). Since January 1, 1932, however, Ohio law has endowed a "spouse" with the dower interest—according to the current version of the dower statute, an "estate for life in one third" of certain real property. Ohio Rev.Code Ann. § 2103.02.

Another change to Ohio dower law as of January 1, 1932 is that, as a general rule, a dower interest, rather than vesting, now generally terminates when the dower-holding spouse becomes a widow or widower upon the death of the property-holding spouse. *See id.* This rule is subject to two exceptions: the dower interest does not terminate when (1) the deceased spouse had *conveyed* the real property during the marriage without the surviving spouse having relinquished or been barred from dower or (2) the deceased spouse had *encumbered* the real property during the marriage without the surviving spouse having relinquished or been barred from dower. *See id.* In other words, the 1932 amendments "abolished all vested dower" except when the two circumstances described above apply. *See Short v. Conn,* No. 93CA709, 1994 WL 21742, at *3 (Ohio Ct.App. Jan.25, 1994). When a dower interest terminates upon the death of the property-holding spouse and neither of those two events have occurred, the surviving dower-holding spouse is entitled to a

"distributive share" in lieu of dower. Ohio Rev.Code Ann. § 2103.02. But here, because Donald encumbered the Property during the marriage, the Dower Interest would not terminate upon his death. To the contrary, although courts applying Ohio law today sometimes describe inchoate dower interests as vesting, if at all, only upon death of the property-owning spouse, *see, e.g., Deutsche Bank,* 2008 WL 2349289, at *3, a spouse now arguably may obtain a vested dower right earlier than the death of the property-holding spouse (*i.e.,* when one of the two events set forth above occurs). *Cf. Reigles v. Urban,* No.2009–L–139, 2010 WL 3666976, at *4 (Ohio Ct.App. Sept. 17, 2010) ("Appellant is correct that the decedent's estranged wife arguably enjoyed a vested dower right at the moment the decedent acquired the property."). *See also State v. Thrower,* 81 Ohio App.3d 15, 610 N.E.2d 433, 436 (1991) ("[S]he enjoyed 'vested' dower rights created by [Ohio Revised Code § ] 2103.02 at the moment her husband acquired the properties."), *jurisdictional motion overruled,* 62 Ohio St.3d 1434, 578 N.E.2d 826 (1991).

This change in the timing of when a dower interest vests under Ohio law, however, does not affect the inchoate nature of a dower right held by a person whose property-owning spouse remains alive. In other words, dower interests that are vested in the sense recognized by the courts in *Reigles* and *Thrower* remain inchoate if the property-holding spouse is not yet deceased. *See Reigles,* 2010 WL 3666976, at *4 ("Appellant['s] ... vested dower right ... would have been inchoate and contingent ... unless and until ... the decedent die[d.]" (citation omitted)); *Thrower,* 610 N.E.2d at 436. *See also Myers v. Vill. of Alger, Ohio* 102 Fed. Appx. 931, 933 (6th Cir.2004) ("Paul Myers's dower interest in the property, as

Diana Myers's spouse, is inchoate until Diana's death."); *United States v. Standring,* No. 1:06–CV–261, 2008 WL 4416448, at *3 (S.D.Ohio Feb.26, 2008) ("Under Ohio law, a dower right is an inchoate right, which becomes choate only upon the death of the spouse."); *Deutsche Bank,* 2008 WL 2349289, at *9 ("Although inchoate right of dower becomes choate only upon the death of a spouse, such right may be protected by a court in a judicial sale of real estate...."); *Stump v. First Nat'l Bank of Shelby (In re Stump),* 183 B.R. 775, 777 n. 2 (Bankr.N.D.Ohio 1995); *Juhasz v. Juhasz,* 134 Ohio St. 257, 16 N.E.2d 328, 332 (1938) ("Under the new Probate Code, effective January 1, 1932, inchoate dower still exists ..." (citation omitted)); ("A spouse is not entitled to possession of the real estate in which such spouse claims dower until the marital partner is deceased."). Thus, the Dower Interest, although technically vested in Linda as soon as Donald obtained title to the Property during their marriage, will remain inchoate for the balance of Donald's life.

## V. The Present Value of an Inchoate Dower Interest Depends on the Ages of Both Spouses.

 Reason and common sense dictate that the present value of a *choate* dower interest will depend on the age of the spouse holding it and that the age of the deceased property-owning spouse is no longer relevant. By contrast, it stands to reason that the present value of an *inchoate* dower interest will depend on the ages of both spouses.[10] As discussed below,

controlling Ohio law is consistent with that view. The Trustee, however, argues otherwise. He contends that, because §§ 2103.041, 2131.01 and 5731.01(B) of the Ohio Revised Code require the Court to look to the actuarial tables of the Internal Revenue Service ("IRS Table(s)") when calculating the present value of an inchoate dower interest, and because those tables direct parties to calculate the present value of a single life estate by looking solely to the age of the spouse who holds it (here, Linda), Donald's age is irrelevant for the purpose of calculating the present value of the Dower Interest. *See* Tr.'s Mot. at 7; Tr.'s Resp. at 5. Chase concedes that the IRS Tables are to be used when determining the present value of the Dower Interest, but contends that those tables must be used in such a way that the ages of both Donald and Linda are taken into consideration. *See* Chase Resp. at 6. For the reasons stated below, the Court concludes that the ages of both Debtors must be taken into consideration when calculating the present value of the Dower Interest using the IRS Tables.

The Court will return to the IRS Tables and their effect on the present value of the Dower Interest in Section VI below. But first, in order to establish the reasons why those tables cannot lead to the result the Trustee posits, the Court will canvass controlling Ohio law and other relevant authorities. In support of his position, the Trustee contends that Chase "cannot point to a single case, other than [*MTGLQ Investors LP v. Simmons,* No. CV 600900 (Ohio Ct.Com.Pl. July 13, 2007) ] that includes a consideration of the husband's age

---

**10.** During oral argument on the Dower–Valuation Issue, the Trustee suggested that an inchoate dower interest must be deemed to have become choate for purposes of a valuation under Ohio Revised Code § 2103.041, thereby eliminating the contingency of the survivorship of the dower-holding spouse

from the calculation of present value. There is nothing in §§ 2103.041 or 2131.01 of the Ohio Revised Code, however, suggesting that an inchoate dower interest should be deemed to have become choate for purposes of calculating the present value of that interest.

in calculating the present value of a wife's dower interest." *See* Tr.'s Resp. at 9. As explained below, the Trustee's statement is flatly wrong—Chase had pointed to such a case (other than *MTGLQ Investors* ) at the time the Trustee made the statement. More importantly, the Trustee's position is contrary to several decisions of the Ohio Supreme Court.

The Ohio Supreme Court has on multiple occasions held that the present value of an inchoate dower interest depends on the ages of both spouses. *See Mandel v. McClave,* 46 Ohio St. 407, 22 N.E. 290, 290 (syllabus ¶ 1) (Ohio 1889); *Unger v. Leiter,* 32 Ohio St. 210, 214 (1877); *Adm'r of Black v. Kuhlman,* 30 Ohio St. 196, 200 (1876).[11] Notably, the valuation issue in each of these decisions arose in the context of a judicial sale of real property subject to an inchoate dower interest, which today would be subject to Ohio Revised Code § 2103.041. These decisions—and the general principles for calculating the present value of a dower interest stated therein—remain good law today. In fact, the Trustee, while otherwise misconstruing the meaning of *Kuhlman* in the manner discussed below, concedes that "the general principles for calculating dower" set forth in *Kuhlman* "remain the same" today. Tr.'s Resp. at 4 n.2.

Chase cited *Mandel, see* Chase's Mot. at 5, and in his response to that motion the Trustee cited *Kuhlman. See* Tr.'s Resp. at 4. So the Trustee's representation that Chase could not point to a single case other than *MTGLQ Investors* holding that the present value of an inchoate dower interest depends on the age of both spouses is, at first blush, surprising. On closer examination, the representation also is seriously misleading. The Trustee cites *Kuhlman* in support of his argument that the only age a court need consider when calculating the present value of an inchoate dower interest is the age of the spouse holding the dower interest. In so doing, the Trustee quotes *Kuhlman* at length and emphasizes in italics a phrase that appears to support his position. *See id.* The Trustee then states that the "Ohio Supreme Court said nothing about using the *age of the husband* in calculating the present value of the widow's dower interest." *Id.* But the Court's review of *Kuhlman* has revealed that the Trustee omitted from his quotation of that decision two sentences that are directly contrary to his position and omitted those sentences despite the fact that they immediately follow the passage quoted by the Trustee. According to the Ohio Supreme Court in *Kuhlman:*

> [T]he exact value of the widow's right of dower can not be known with absolute certainty. It will depend largely on the length of her life, which can not be foreseen by the court. Yet its present value can be approximately ascertained. Tables have been constructed, based on wide and long observation, from which, the age of the widow being known, the probable duration of her life, and the present value of her dower right may be ascertained with reasonable certainty.

---

**11.** In addition, two bankruptcy courts applying Ohio law have held that the ages of both spouses are relevant when determining the present value of an inchoate dower interest. *See Castor,* 99 B.R. at 813 (applying the "Bowditch Table," which is discussed below); *In re Hill,* 11 B.R. 217, 220 (Bankr.S.D.Ohio 1981) (same). Numerous courts applying the laws of other states also have so held. Indeed, although the Trustee describes Chase's proposed method of valuing the Dower Interest as a "novel approach," Tr.'s Resp. at 4, Chase's method is anything but novel. *See* Computation of the Value of an Inchoate Dower Right, 34 A.L.R. 1021 (West 2011) (citing numerous cases under the laws of various states, including Ohio, holding that the ages of both spouses must be considered in calculating the present value of an inchoate dower interest).

*In a case like the present, where the husband and wife are both living, there is an additional element of uncertainty, for the probability of the wife's survivorship is to be considered in the calculation.*

*But even here, we have mathematical tables which give the present value of an inchoate right of dower, where the value of the whole estate and the ages of both husband and wife are known.*

*Kuhlman,* 30 Ohio St. at 199–200 (emphasis added).[12] The Trustee omitted the sentences emphasized above from his quotation of *Kuhlman.*[13] Notwithstanding the Trustee's omission, it is clear that *Kuhlman,* like *Mandel* and *Unger,* requires the Court to consider the ages of both spouses when calculating the present value of an inchoate dower interest.

An even closer examination of *Kuhlman* and several other cases will be helpful in connection with the Court's later discussion of the proper use of the IRS Tables. Calculating the present value of a contingent interest such as an inchoate dower interest requires the combined use of annuity or income tables and life tables (also known as mortality tables). *See* Florien Giauque & Henry B. McClure, *Tables for Ascertaining the Present Value of Vested and Contingent Rights of Dower, Curtesy, Annuities and Other Life Estates* (1894) at v, 1, 4–7, 19–20. Some of the best known early mortality tables were the Carlisle Table of Mortality ("Carlisle Table") and the American Experience Table of Mortality ("American Experience Table"). *See id.* at 1.

In *Kuhlman,* the Ohio Supreme Court used an annuity table based on the Carlisle Table. Although the court referred to the annuity table in the plural as "Mr. Bowditch's tables," *Kuhlman,* 30 Ohio St. at 200, it appears that the Ohio Supreme Court was referencing The Bowditch Table for Ascertaining the Value of Contingent Dower Rights, Etc. 6 Per Cent ("Bowditch Table"). *See* Giauque & McClure at 179–81. As its full title suggests, the Bowditch Table was specifically designed to assist parties in calculating the present value of interests such as inchoate dower rights. *See id.* at 179. The Bowditch Table was prepared in the early 1800s and was "an incomplete table for finding the present value of contingent dower rights, on the basis of the Carlisle Table, for six per cent." *Id.* at 180. This was accomplished by "[f]ind[ing] the number which is in both the *column under* the husband's age, and in the *line to the right of* the wife's age." *Id.* Thus, the Bowditch Table was consistent with the Ohio Supreme Court's holding that the "probability of the [dower-holding spouse's] survivorship[,]" *Kuhlman,* 30 Ohio St. at 200, was to be taken

12. The Ohio Supreme Court decided *Kuhlman* prior to the establishment of dower in both husband and wife in Ohio, which occurred in 1887. *See Cameron v. Goebel & Bettinger,* 1900 WL 1116, at *3 (Ohio Cir.Ct. 1900). Decisions pre-dating 1887 should be read today, consistent with current Ohio law, to apply to any dower-holding spouse, whether husband or wife.

13. The Court should be able to trust counsel to accurately characterize controlling authority. *See LeGrand v. McCrea,* No. 92–0987, 1992 WL 328890, at *2 n. 1 (E.D.Pa. Oct.26, 1992) ("I am disturbed by the misquotation by plaintiff's counsel [of an official comment to a Federal Rule of Civil Procedure]. The language omitted by him was central to the issue. I remind counsel for the plaintiff of his ethical obligation to cite controlling authority accurately."), *aff'd sub nom. Legrand v. McRae,* 998 F.2d 1003 (table) (3d Cir.1993). *See also In re Hentges,* 352 B.R. 487, 498 (Bankr.N.D.Okla.2006) ("[T]he Court should be able to rely upon the veracity of counsel's representation as to the content of a document without having to examine the document to determine whether counsel's 'spin' conceals material undisclosed facts.").

into consideration when calculating the present value of dower interests, including those of an inchoate nature.

The American Experience Table eventually replaced the Carlisle Table (the mortality table on which the Bowditch Table was based) as the state-of-the-art mortality table to be used when determining the present value of interests such as inchoate dower interests. *See Gordon v. Tweedy,* 74 Ala. 232, 1883 WL 1010, at *3 (1883) ("New fields of observation have been explored, based upon the combined and actual experience of American life-insurance companies. This has led to the tabulation of results in what is now known as the 'American Table of Mortality,' which is now regarded as the orthodox standard throughout the United States and the Canadas."). Thus, effective January 1, 1932, Ohio began to require the use of the American Experience Table when determining the present value of dower and certain other interests. *See In re Hough's Estate,* 152 N.E.2d 561, 566–67 (Ohio Prob.1958).

Although the Court's independent research has uncovered no decisions by the state courts of Ohio applying the American Experience Table in the context of inchoate dower interests, decisions from other states support the view that the ages of both spouses were taken into consideration when using that table. *See Goldman v. Goldman,* 143 Misc. 187, 256 N.Y.S. 63, 63–64 (N.Y.Sup.) (adopting the valuation of an inchoate dower interest provided by the state insurance department, which used the American Experience Table in conjunction with annuity tables and the ages of both spouses in arriving at the valuation), *supplemented by* 143 Misc. 190, 256

N.Y.S. 696 (N.Y.Sup.1932); *Share v. Trickle,* 183 Wis. 1, 197 N.W. 329, 332 (1924) (same).[14] *Share* also is notable because one party in that case made the same mistake that the Trustee makes here— treating the Dower Interest as choate when it is not. *See Share,* 197 N.W. at 332 ("The determination of [present] value is less common and more difficult when dower is inchoate than when it is consummate. It involves the consideration of the ages of two persons instead of one and the consideration of the health and expectancy of life of both. Counsel for defendants compute the dower right as if it were consummate, and on that basis claim that it amounts to $6,583. This view cannot be sustained. It disregards the fact that the dower right is only inchoate and in effect converts the wife into a widow.").

Not surprisingly, "current mortality assumptions ... can change over time[.]" Stephanie Rapkin, *Rapkin on New Valuation Tables,* LEXSEE 2009 Emerging Issues 3636 (May 19, 2009) at 1 (footnote omitted) (copy attached as Exhibit A to the Tr.'s Resp.). As a result, tables such as the American Experience Table eventually become outdated. *See Palmore v. Swiney,* 807 S.W.2d 950, 953 (Ky.Ct.App. 1990) (describing the American Experience Table as "very outdated"); *Berry v. President & Dirs. of Bank of Manhattan Co.,* 133 N.J. Eq. 164, 31 A.2d 203, 204 (1943) ("It is ... common knowledge that the average life has been extended many years since the [American Experience Table of Mortality was] drawn up."). By contrast, the Internal Revenue Service ("IRS") regularly updates the IRS Tables. *See* Rap-

**14.** In *Goldman,* the judge conceded that understanding the calculation was difficult. *See Goldman,* 256 N.Y.S. at 63–64 ("I have found the necessary calculations somewhat beyond me, and have accordingly referred the problem to the insurance department, which has

made the computations and found the present value of the wife's interest to be $48.74. While I do not profess an understanding of all the steps in the process of calculation, I have entire faith in the correctness of the result, and accordingly adopt it").

kin at 1. It is perhaps for that reason, among possibly others, that the Ohio legislature revised Ohio Revised Code §§ 2103.041 and 2131.01 in 1999 to require the use of the IRS Tables rather than the American Experience Table when calculating the present value of an inchoate dower interest.[15] It is clear that the Ohio legislature's intent in revising the Ohio Revised Code §§ 2103.041 and 2131.01 was to replace the American Experience Table, not to otherwise overturn the methodology for calculating the present value of inchoate dower interests as set forth in long-standing Ohio law.

██ When ascertaining the intent of the Ohio legislature, the Ohio Supreme Court frequently has looked to the relevant final bill analysis conducted by the Ohio Legislative Service Commission ("Commission"). *See, e.g., Griffith v. City of Cleveland,* 128 Ohio St.3d 35, 941 N.E.2d 1157, 1159–60 (2010); *Dialysis Clinic, Inc. v. Levin,* 127 Ohio St.3d 215, 938 N.E.2d 329, 334–35 & n. 3, *reconsideration denied,* 127 Ohio St.3d 1486, 939 N.E.2d 184 (table) (2010). The Commission's Final Bill Analysis of Am. Sub. H.B. 59 makes clear that the purpose of revising §§ 2103.041 and 2131.01 was to replace the American Experience Table. *See* OH B. An., 1999 H.B. 59 (Westlaw) ("The former Miscellaneous Probate Matters Law provided that the 'American Experience Table of Mortality' must be used as the basis of determining present values in probate matters (former sec. 2131.01). The act outright repeals that provision and instead specifies that present values for probate matters must be the values determined for Ohio estate tax purposes under the Ohio Estate Tax Law (new sec. 2131.01; Section 2). The act similarly provides that the court determine the present value and priority of the dower interest of a spouse in real property being sold at a judicial sale in accordance with new section 2131.01 (sec.2103.041)." (citations omitted)). The Court also finds it notable that the Commission's analysis provides (with respect to another section of the Ohio Revised Code amended by Am. Sub. H.B. 59 that is not relevant here) that "Section 3 of the act states that it is the General Assembly's intent in amending section 1340.02 in the act to limit the application of the Ohio

---

**15.** Prior to 1999, Ohio Revised Code § 2103.041 required the use of the American Experience Table when calculating the present value of dower interests. That changed with Am. Sub. H.B. No. 59, which became effective on October 29, 1999. Am. Sub. H.B. No. 59 is available at http://www.legislature. state.oh.us/bills.cfm?ID=123_HB_59. As a result of that bill, Ohio Revised Code § 2103.041 now incorporates by reference Ohio Revised Code § 2131.01, which in turn states that "[p]resent values for probate matters shall be the values determined for Ohio estate tax purposes pursuant to division (B) of section 5731.01 of the [Ohio] Revised Code." Ohio Rev.Code Ann. § 2131.01 (West 2011). The parties appear to agree that the current version of Ohio Revised Code § 2131.01 applies, apparently because Linda's interest in the Property arose when Donald obtained it in 2002, after the current statutory provision became effective in 1999. Likewise, the Court sees no reason why the current version of Ohio Revised Code § 2131.01 would not apply here. That section in turn refers to Ohio Revised Code § 5731.01(B), which incorporates "[t]he rulings and regulations of the [I]nternal [R]evenue [S]ervice and decisions of the federal courts defining the principles applicable in determining fair market value for purposes of the federal estate tax imposed by Subchapter A, Chapter 11 of the Internal Revenue Code...." Ohio Rev.Code Ann. § 5731.01(B) (West 2011). As explained in more detail in Section VII below, the applicable regulations of the IRS require the use of the IRS Tables. Those regulations, however, in no way overturn the general requirement—recognized by the Ohio Supreme Court and many other courts in cases using the Bowditch Table and the American Experience Table—of including the ages of both spouses in the calculation of an inchoate dower interest.

Supreme Court's holding in *Sherman v. Sherman* (1966), 5 Ohio St.2d 27 [213 N.E.2d 360]." *Id.* Whenever it amends a statutory provision, the Ohio legislature is presumed to be aware of decisions of the Ohio Supreme Court, if any, that the amendment would legislatively overrule. *Cf. Rhiel v. Huntington Nat'l Bank (In re Phalen),* 445 B.R. 830, 843 (Bankr. S.D.Ohio2011) ("[T]he 1831 Statute interpreted by the Ohio Supreme Court in *Smith's Lessee* has been amended from time to time, but the Certification Requirement has remained unchanged, including in § 5301.01(A). The Court, therefore, must presume that the Ohio legislature was familiar with *Smith's Lessee* when it enacted § 5301.01(A) and must construe § 5301.01(A) accordingly."). Despite the Ohio General Assembly's presumed awareness of *Kuhlman, Mandel* and *Unger,* there was—unlike the statement regarding the legislature's intent to limit the application of *Sherman*—no statement in Am. Sub. H.B. 59 or the Ohio Legislative Service's analysis of it regarding any intent to limit the application of the holdings of *Kuhlman, Mandel* and *Unger.* Nor was there any suggestion that the legislature intended to overturn the general principles for calculating the present value of an inchoate dower interest set forth in those decisions.

 In light of the foregoing, the Court concludes that the Ohio legislature intended in 1999 to change the actuarial tables to which courts must look when calculating the present value of an inchoate dower interest—from the American Experience Table to the IRS Tables—but did not intend to otherwise overrule the methodology for calculating the present value of an inchoate dower interest set forth in *Kuhlman, Mandel* and *Unger.* Again, the Trustee concedes this premise. *See* Tr.'s Resp. at 4 n.2. The premise, however, leads to a conclusion contrary to the Trustee's position, which is based in part on a mischaracterization of *Kuhlman.* To conclude, notwithstanding the Trustee's representation otherwise, Ohio law is clear: The ages of both spouses must be considered when calculating the present value of an inchoate dower interest.[16]

## VI. The Proper Use of the IRS Tables

With this background, it becomes easier to understand why the Trustee's position with respect to the proper use of the IRS Tables, which he strenuously defended in his papers and during oral argument, is simply wrong. In short, the Ohio statutory provisions discussed above—and the IRS regulations to which they point—in no way overturn the general principles for calculating the present value of an inchoate dower interest recognized by the Ohio Supreme Court and many other courts in cases using the Bowditch Table and the American Experience Table. In addition, the IRS Tables, like the other tables discussed above that courts have used in the past, are consistent with the requirement that the ages of both spouses must be included in the calculation of the present value of an inchoate dower interest.

As noted above, Ohio Revised Code § 5731.01(B), made applicable by Ohio Re-

---

**16.** In *Mandel,* the Ohio Supreme Court stated that the present value of an inchoate dower interest is to be based on "tables of mortality, *aided by evidence respecting the state of health and constitutional vigor of the husband and wife respectively.*" *Mandel,* 22 N.E. at 290 (syllabus ¶ 1) (emphasis added). *Accord Unger,* 32 Ohio St. at 214; *Kuhlman,* 30 Ohio St. at 200. The IRS Tables "assume good health." Rapkin at 3. The parties have not raised and the Court does not address the extent to which the poor health of one or more of the spouses could affect the calculation of the present value of an inchoate dower interest.

vised Code §§ 2103.041 and 2131.01, requires courts to look to "[t]he rulings and regulations of the [I]nternal [R]evenue [S]ervice . . . applicable in determining fair market value for purposes of the federal estate tax imposed by Subchapter A, Chapter 11 of the Internal Revenue Code. . . ." *See* Ohio Rev.Code Ann. § 5731.01(B). "The regulations pursuant to [S]ubchapter A are set forth in [26 C.F.R.] §§ 20.2001–1 to 20.2056(d)–1." 26 C.F.R. § 20.0–1(b). Because the goal in this adversary proceeding is to arrive at the present value of an inchoate dower interest as of the Petition Date of August 6, 2009, the applicable regulation is 26 C.F.R. § 20.2031–7T(d). This regulation applies to the calculation of the present value of life estates for which the valuation date is on or after May 1, 2009 and directs parties to IRS Publication 1457, Internal Revenue Service, *Actuarial Valuations Version 3A* (2009), *see* 26 C.F.R. § 20.2031–7T(d)(4), *available* at http://www.irs.gov/retirement/article/0,,id=206601,00.html (last visited March 29, 2011). Just as the state courts in *Goldman* and *Share* looked to the expertise of the state insurance department when calculating the value of an inchoate dower interest based on an actuarial table that did not directly address how to conduct the valuation, *see Goldman*, 256 N.Y.S. at 64 and *Share*, 197 N.W. at 332, here the Court must look to the guidance provided by the IRS in IRS Publication 1457.

The parties agree that IRS Publication 1457 and the IRS Tables are relevant, but disagree on how they should be used. Consistent with the controlling precedent of the Ohio Supreme Court discussed above, Chase contends that the IRS materials must be applied by taking into consideration the ages of both spouses. *See* Chase Resp. at 7. The Trustee, however, argues that doing so would be inconsistent with the IRS Tables. *See* Tr.'s Resp. at 4–6.

As previously discussed, the Ohio legislature did not intend in 1999 to alter the basic approach required when calculating the present value of an inchoate dower interest as set forth in *Kuhlman, Mandel* and *Unger*, under which the ages of each spouse must be considered. It is not surprising, therefore, that Ohio courts applying the IRS Tables to calculate the present value of an inchoate dower interest have used the ages of both spouses. *See MTGLQ Investors LP*, No. CV 600900, at 4–7. *See also Deutsche Bank Trust Co.*, 2008 WL 2349289, at *8 (noting with apparent approval that "[t]he trial court made a determination that the dower interest had to be valued and the ultimate determination of the dower held in abeyance until a party produces evidence as to the . . . *ages of the Smiths*" (emphasis added) (internal quotation marks omitted)). As far as the Court is aware, no state court in Ohio has applied the IRS Tables to calculate the present value of an inchoate dower interest without taking into consideration the ages of both spouses.[17]

---

**17.** The Trustee relies heavily on two decisions, *In re Rosario*, 402 B.R. 223 (Bankr. N.D.Ohio 2009) and *In re Morrow*, No. 07–12142, 2009 WL 1607582 (Bankr.N.D.Ohio Feb.12, 2009), in which bankruptcy courts used the IRS Tables to calculate the present value of an inchoate dower interest based on the age of the dower-holding spouse only. *See* Tr.'s Resp. at 7–8. Along the same lines is a decision by a bankruptcy court applying the American Experience Table. *See In re Miller*, 151 B.R. 800, 804 (Bankr.N.D.Ohio 1992). In each decision, however, the bankruptcy court appears to have assumed that the only relevant age was the age of the dower-holding spouse. Thus, the issue before the Court here—whether controlling Ohio law requires courts to consider the ages of one or both spouses—was neither the focal point of *Rosario, Morrow* or *Miller*, nor was that issue ac-

Furthermore, the Court finds—in what will be a relatively short but technical part of this opinion—that the IRS Tables are entirely consistent with the approach required by Ohio law.[18] The tables that are relevant to the Dower–Valuation Issue include Table S (Single Life Factors) ("Table S") and Table R(2)—0.2% to 4.0% [19] (Last-to–Die Remainder Factors) ("Table R(2)"). Table R(2) "contains factors for the present worth of [a] remainder interest ... payable at the death of the last to die of two persons." IRS Publication 1457 at 5. The Trustee contends that, because a remainder interest becomes choate only after two persons die, Table R(2) cannot be used in the calculation of the present value of an inchoate dower interest which, as discussed above, becomes choate when one person—the property-owning spouse—dies. Instead, the Trustee argues, the table to which the Court must look is Table S, which "contains factors for the present worth of a life annuity, a life estate, and a remainder interest based on a single life." *Id.* at 4. Of course, the Trustee's argument ignores the fact that an inchoate dower interest becomes choate only upon the death of the property-owning spouse.

Given that the IRS Tables are applicable to a wide variety of interests, IRS Publication 1457 is designed to "illustrate methods for using the factors in the associated tables for valuations, and for finding other factors not found directly in the tables." *Id.* Indeed, it is precisely because the method for calculating the present value of an inchoate dower interest cannot be found directly in any single IRS Table that IRS Publication 1457 must be used.

Section B of IRS Publication 1457 is entitled "Income or Annuity Payable for Such Time as One Person Survives Another." *See id.* at 7. Because an inchoate dower interest becomes choate when the dower-holding spouse survives the property-holding spouse and ends when the dower-holding spouse dies, Section B is the place to look to determine how to calculate the value of an inchoate dower interest using the IRS Tables. *Cf. Kuhlman,* 30 Ohio St. at 200 (holding that the "probability of the [dower-holding spouse's] survivorship" must be taken into consideration when calculating the present value of an inchoate dower interest).

Example 4 in Section B of IRS Publication 1457 ("Example 4") is designed to demonstrate how to calculate the value of the right to receive income for such time as one person survives another and thus takes into consideration the ages of two persons, such as two spouses in the inchoate-dower context. Given this, Example 4—augmented by the need to divide by three at the end of the calculation to reflect that dower is a one-third interest—provides the proper method for calculating the present value of an inchoate dower interest. *See MTGLQ Investors LP,* No. CV 600900, at 5–6 ("In order to calculate the [present value of an inchoate] dower [interest] using the IRS Tables, one must: 1) Determine the value of a life estate that lasts until *both* owner and spouse are likely

---

**18.** Along with Publication 1457 and certain other information, the IRS Tables are available at http://www.irs.gov/retirement/article/0,,id=206601,00.html.

tively litigated by the parties in those cases. *See Rosario,* 402 B.R. at 231–32 & n. 10; *Morrow,* 2009 WL 1607582, at *4; *Miller,* 151 B.R. at 804. In any event, although the Court recognizes the cogent analysis of *Rosario, Morrow* and *Miller* on other points of law, the Court is bound by the controlling decisions of the Ohio Supreme Court on the state-law issue of how to calculate the present value of an inchoate dower interest.

**19.** Although other tables designated as Table R(2) use different rates, Chase and the Trustee have stipulated to a discount rate of 3.4%.

to have died using Table R(2); 2) Determine the value of a life estate that lasts as long as the life of the owner of the property using Table S; [and] 3) Determine the value of dower by (a) subtracting the value of the life estate that lasts as long as the owner's life from the value of the life estate that lasts until both spouses are likely to have died and (b) dividing this number by three (because dower is a life estate in one-third of the subject property.)").

An even closer review of IRS Publication 1457 makes clear that the Trustee's argument based on Table R(2) is incorrect. As the court in *MTGLQ Investors* stated: "Table R(2) is set up to calculate the value of a remainder ... that lasts as long as two lives. To determine the value of a life estate rather than a remainder, this amount must be subtracted from one." *MTGLQ Investors LP* at 6 (citation omitted). The approach followed by the court in *MTGLQ Investors* is consistent with the methodology set forth in IRS Publication 1457. Example 4 incorporates Example 2 of IRS Publication 1457, which in turn incorporates Example 1 of IRS Publication 1457. Example 1 illustrates how to calculate the present value of a remainder interest and then states that "[a] life estate factor ... for the same ages and interest rate can be computed using [E]xample[ ] 2 . . . ." IRS Publication 1457 at 7. In turn, Example 2 states that the factor calculated pursuant to Example 1 is subtracted from the number one. *See id.* at 7. Presumably, the calculation requires that the value of the remainder be subtracted from one because the value of a remainder depends on the estimated remaining lengths of two lives, while the value of a life estate depends on the estimated remaining length of one life. In other words, IRS Publication 1457 makes clear that Table R(2) is relevant to the calculation of the present value of a life estate. This belies the Trustee's arguments that (1) Table

R(2) is relevant only to the calculation of the present value of a remainder interest and (2) has no bearing on the calculation of the present value of an inchoate dower interest. In short, a close reading of IRS Publication 1457 reveals that the Trustee has misconstrued it—just as he has misconstrued *Kuhlman.*

The steps required to calculate the present value of an inchoate dower interest are summarized above and are set forth in detail in *MTGLQ Investors* and in the Chase Motion. Like the state court in *Goldman,* the Court does not pretend to understand the intricacies of the calculation as deeply as an actuary would; however, it is clear that the calculation outlined above is consistent with controlling Ohio law, under which the ages of both spouses must be used when calculating the present value of an inchoate dower interest. The Court has reviewed the calculation by which Chase concluded that the present value of the Dower Interest as of the Petition Date is $6,538.18. It would take at least several additional pages of text to repeat the calculation here, and the Court sees no reason to do so. The Court, however, believes the calculation to be correct. Moreover, based on that calculation, it appears that the present value of the Dower Interest as of the Petition Date is less than the amount of the exemption to which Linda, as discussed above, arguably would be entitled under Ohio law. Accordingly, it appears that, at the end of the day, there may be no proceeds available for distribution to unsecured creditors.

### VII. Conclusion

In light of the foregoing, the Chase Motion is **GRANTED** and the Trustee's Motion is **DENIED**. Because the motions are for partial summary judgment, the Court will not enter a separate judgment entry in accordance with this order, but

instead will set a status conference in this adversary proceeding by separate order.

**IT IS SO ORDERED.**